HENRIETTA CRAGER, ADMINISTRATRIX AD PROSEQUEN-
DUM AND GENERAL ADMINISTRATRIX OF THE
ESTATE OF SIEMON CRAGER, DECEASED, PLAINTIFF-
APPELLANT, v. WEST HOBOKEN TRANSFER AND EX-
PRESS COMPANY, A CORPORATION, AND FRED EG-
GERS, DEFENDANTS-APPELLEES.

Submitted October 2, 1944—Decided March 26, 1945.

Before BROGAN, CHIEF JUSTICE, and Justices DONGES and
PERSKIE.

For the appellant, *Felix Bigotto* (*Andrew O. Wittreich,*
of counsel).

For the appellees, *Autenreith & Wortendyke* (*Reynier J.
Wortendyke,* of counsel).

The opinion of the court was delivered by

PERSKIE, J.    This cause arises under what is commonly
known as the Death Act.  *R. S.* 2:47–1, *et seq.*  Henrietta
Crager, appellant here and plaintiff below, administratrix

*ad prosequendum* and general administratrix of the estate of Siemon Crager, her deceased husband, appeals from a judgment of the Hudson County Court of Common Pleas of "no cause for action, based upon a jury verdict, in favor of West Hoboken Transfer and Express Company, owner, and Fred Eggers" driver of the truck, and upon whom liability was sought to be fastened for the death of Siemon Crager.

Appellant sets down seven grounds of appeal. They are "grouped and summarized" and argued as follows:

1. "Errors in the admission of evidence." (Grounds 1 to 5.)

2. "Error in the rejection of any hypothetical question as to witness qualified by defendant as an expert." (Ground 7.)

3. "Error in the court's refusal to strike out unconnected testimony." (Grounds 7 and 8.) Grounds 9 to 11 are abandoned.

The applicable law, statutory and case, is clear. We do not reverse a judgment for the errors set down unless, after the examination of the whole case, it appears that the "error injuriously affected the substantial rights" of the aggrieved party. *R. S.* 2:27–363. *Kargman* v. *Carlo*, 85 *N. J. L.* 632, 638; 90 *Atl. Rep.* 292; *218-220 Market St. Corp.* v. *Krich-Radisco, Inc.*, 124 *N. J. L.* 302, 304; 11 *Atl. Rep.* (*2d*) 109; *De Freitas* v. *Metropolitan Life Insurance Co.*, 131 *N. J. L.* 5; 34 *Atl. Rep.* (*2d*) 233; *Costanza* v. *Cavanaugh*, 131 *N. J. L.* 175, 179; 35 *Atl. Rep.* (*2d*) 612.

Our examination of the whole case fails to disclose that the errors assigned, if errors, injuriously affected the substantial rights of the plaintiff. That examination discloses that the evidence, in support of the alleged errors, is free from substantial dispute. Much of it was in fact repeatedly admitted and none of it was seriously challenged. It is the relevancy and materiality of the evidence, its lack of causal connection with the death of Crager that are stressed. We turn to the evidence.

Siemon Crager, then about 53 years of age and weighing about 84 or 85 pounds, was admitted on November 28th, 1934, to the State Hospital for the Insane, now known as Greystone Park, and hereafter referred to as Hospital. He was com-

mitted to the Hospital as an indigent patient by order of the Hudson County Court of Common Pleas on January 11th, 1935. He suffered from "cerebral arteriosclerosis with extreme agitation and depression," and also suffered "convolutional changes" which were "more marked than the cerebral arteriosclerosis." With the exception of two visits which he made to his family over the Christmas holidays in 1937 and 1939, Crager continuously remained in the Hospital until he was discharged therefrom, on August 24th, 1941, "as improved." Although he had gained about ten pounds while in the Hospital, Crager, according to Dr. Collins, senior resident physician and clinical director of the Hospital since 1919, was still suffering from the same ailments which he suffered when first admitted. He was not a "sane man." Prognosis for his future was "very unsatisfactory." His "complete cure" was "hopeless." And Dr. Collins "never thought" that Crager would in "any reasonable probability" ever be capable of "gainful employment."

Dr. Dredge, resident physician at the Hospital for the past ten years, corroborated the testimony of Dr. Collins. He testified that Crager, although improved, had not "regained sanity" when discharged, and that he would not be able to engage in any gainful occupation "to any extent" nor would his work produce "anything worth while."

Notwithstanding all this, the facts that Crager had improved, that he was anxious to go home, that the pre-parole investigation was satisfactory, that the Board of the Hospital (consisting of about fourteen or fifteen in number) acted favorably, resulted in the stated discharge of Crager on August 24th, 1941. Crager's family were, however, told of his "past condition," and of his "suicidal tendencies," and were further told that "they must give him watchful care and supervision."

It should be noted that during the period of almost seven years of his confinement in the Hospital, Crager did not contribute to the support of his wife, Henrietta Crager. She lived part of the time with one of her daughters at Oceanville, New York, and part of the time with another of their daughters at Union City, New Jersey. Both daughters were

married and both helped to support their mother. The only income which the mother had was $14.74 which she received every three months, as total disability benefits, under a policy of insurance covering her husband's life, the premiums for which were paid by the daughters.

After his discharge from the Hospital Crager and his wife were, in accordance with planned arrangements, provided with living accommodations with their daughter in Union City, and Crager was employed by his son-in-law in his business of peddling fruit and vegetables. This arrangement continued for about three or four days when on August 28th, 1941, Crager, allegedly walking in a general northerly direction across Fourteenth Street, at or near its intersection with Central Avenue, in the City of Union, was hit by the truck owned by the defendant corporation and operated by its servant. Crager died instantly.

The defenses to appellant's action were, among others, that deceased was guilty of contributory negligence, that he assumed the risk, and a denial of any "pecuniary injuries resulting" from the death of Crager to his widow and next of kin.

The judge in a comprehensive, correct and fair charge, free from exception, submitted the case to the jury with the result already stated.

With the stated result of our examination of the whole case in mind and passing over the form of the grounds of appeal and the manner in which they are set down in the brief of the appellant (*Healy* v. *Sayre,* 113 *N. J. L.* 308, 313; 174 *Atl. Rep.* 534; *State* v. *Hogan,* 132 *N. J. L.* 148; 39 *Atl. Rep.* (*2d*) 226; *Rosenquist* v. *Brookdale Homes, Inc.,* 132 *N. J. L.* 531, we recur to the consideration of the merits of the grounds of appeal.

1. The specific complaints under the first grouped grounds of appeal are that Dr. Collins was permitted to testify as to the sanity of the deceased and that this error had for its source testimony, introduced on the qualifications of Dr. Collins, as to the scope of his work at the Hospital. The facts that deceased was insane and that he manifested suicidal tendencies were not only proved, without objection, but were

conceded. The evidence as to the scope of Dr. Collins' work was preliminary in character in establishing his background. At all events, no prejudicial error is made to appear in either branch of this argument.

2. The specific complaint under the second grouped ground of appeal (it relates to ground of appeal No. 6 and not to No. 7), is that the trial judge erred in sustaining defendants' objections to the hypothetical question directed to Dr. Collins, on his cross-examination by counsel for plaintiff. This question was apparently aimed to have the doctor say whether the facts and circumstances connected with Crager's death "in anywise were related with any insane condition which he had manifested for seven years prior thereto?" To a confusing question posed to Dr. Collins on his recross-examination, the jury might have concluded that his answer, in substance, to the hypothetical question was in the negative. Dr. Collins did not testify that Crager's insane condition caused the accident in question. He was properly precluded from testifying as to Crager's particular suicidal tendency to jump in front of a moving vehicle because the doctor had not actually seen Crager manifest such tendency. Notwithstanding all this, one of the issues, as pointed out for the appellees, was not whether Crager was fatally injured because he was insane, but rather whether he was insane when injured. Thus when Crager was adjudged insane and committed to the Hospital, the presumption arose that he continued to be insane until it was overcome by evidence of a return to sanity. *Coombs* v. *Witte,* 104 *N. J. L.* 519; 140 *Atl. Rep.* 408. Dr. Collins' testimony that Crager continued to be insane when discharged from the Hospital fortified that continued presumption, it was for the jury to find the fact. Passing over the question of whether Crager's mental condition was or was not relevant on the question of his contributory negligence and assumption of risk, it is clear that sight is lost of the fact that the evidence of Crager's mental and physical condition were vital factors, in the determination by the jury of his ability to engage in gainful occupation, to determine the "damages," if any, which the jury might "deem fair and just with reference to the pecuniary injuries

resulting from [Crager's] death to the widow  *  *  *  and next of kin of the deceased." *R. S.* 2:47–5. *Cf. Hampton* v. *Pennsylvania Railroad Co.,* 115 *N. J. L.* 168; 179 *Atl. Rep.* 101. If it were thought that the jury might erroneously apply the otherwise legal evidence as to Crager's mental and physical condition at the time of the accident, then request for cautionary instructions could have been, but were not, made. *Cf. Feldman* v. *Jacob Branfman & Sons,* 111 *N. J. L.* 37, 42; 166 *Atl. Rep.* 126. Here, too, there is no prejudicial error.

3. The specific complaint under grouped ground 3 of the appeal is that the court erred in denying plaintiff's motion to strike the testimony of Dr. Collins and Dr. Dredge because it had no causal connection with the issue and was not "connected up" with the death of Crager on August 28th, 1941. What has been said under ground 2 is dispositive of the specific complaint here argued.

Judgment is affirmed, with costs.