AURELIA CRUZ, sustituída por su heredero FRANCISCO CRUZ VEGA, demandante y apelante, *v.* ANTONIO BRUNO RODRÍGUEZ y ANTONIO LÓPEZ como herederos de INÉS LÓPEZ DE BRUNO, demandados y apelados.

Número 11083.
*Sometido:* 1 de abril de 1954. *Resuelto:* 22 de julio de 1954.

*Adrián Agosto,* abogado de los apelantes; *R. Arjona Siaca,* abogado de los apelados.

El Juez Asociado Señor Ortiz emitió la opinión del tribunal.

Se trata en este caso de una acción de "Cumplimiento de Contrato de Venta de una Casa." En la demanda se alega que Antonio B. Rodríguez e Inés López de Bruno eran dueños de una casa localizada en el Barrio Obrero en Santurce y formalizaron un contrato de venta de la casa en favor de Aurelia Cruz, sustituída ahora como demandante, en virtud de su fallecimiento, por su heredero Francisco Cruz Vera; que antes del contrato Antonio B. Rodríguez había ingresado en la Clínica Dr. Juliá por padecer de una enfermedad mental. Es la tesis de la parte demandante que, al momento de otor-

garse el contrato, Rodríguez estaba en un período de lucidez. Se alega en la demanda que Aurelia Cruz entró en la posesión de la casa e hizo mejoras en ella de un valor o costo de $1,105 a ser deducidos del precio de venta. Se solicita que se ordene a los demandados a otorgar la escritura de la venta de la casa. Los demandados contestaron, alegando en síntesis que no hubo contrato válido alguno de venta de la casa; que Rodríguez estaba permanentemente privado de sus facultades mentales en la fecha que se alega que se hizo el contrato, y que él no tuvo momento o período alguno de lucidez desde que él ingresó en la clínica. Presentaron los demandados una contrademanda en que alegaban que la parte demandante ha estado indebidamente en la posesión de la casa, de mala fe, debiendo pagar a los demandados la suma de $1,850 en concepto de daños y perjuicios.

Al celebrarse la vista del caso en sus méritos, la parte demandante se limitó a presentar en evidencia cierta prueba documental, consistente en los expedientes de unos casos sobre Declaración de Incapacidad y Nombramiento de Tutor, relativos a la incapacidad de Rodríguez; la transcripción de evidencia en un caso de desahucio que había sido tramitado entre las mismas partes con respecto a la misma casa objeto de este litigio, y los autos del caso de desahucio, con especial referencia a la sentencia dictada por otro juez de la entonces Corte de Distrito de San Juan, en que se declaraba sin lugar la demanda por mediar un conflicto de títulos, en vista de la prueba presentada relativa a la incapacidad de Rodríguez. Los demandados estipularon que se admitieran los expedientes relativos a la incapacidad de Rodríguez, pero se opusieron a que se admitiese en evidencia la transcripción de evidencia del caso de desahucio, alegando que no era admisible en este litigio la prueba presentada en el otro caso. Estipularon los demandados que fuese admitida la prueba de la sentencia dictada en el caso de desahucio en cuanto al hecho en sí de que se había dictado la sentencia, pero se opusieron a que se le diese efecto legal alguno a esa sentencia, ya que ella no debía servir como

cosa juzgada en el caso de autos. Esa fué la prueba de la parte demandante. Los demandados se limitaron a presentar el testimonio oral del Dr. Rafael Arzuaga, de la Clínica Dr. Juliá, quien declaró, a base de las constancias de los "récords" de la Clínica, que Rodríguez había ingresado en la clínica el 29 de enero de 1941 (antes de la fecha alegada del supuesto contrato de venta de 23 de agosto de 1944), y que nunca había salido de la clínica, con la única excepción de una ocasión el 5 de marzo de 1950.

El Tribunal de San Juan dictó sentencia declarando sin lugar la demanda, resolviendo que Rodríguez estaba incapacitado mentalmente, sin haberse demostrado que él otorgase el supuesto contrato de venta durante un intervalo de lucidez mental, y que la sentencia anterior de desahucio no era *res judicata* en este litigio. Declaró con lugar la contrademanda, resolviendo que la propiedad podía haber rentado a los demandados $25 mensuales, según había sido establecido oficialmente por la oficina correspondiente de Inquilinato (según prueba ofrecida por la propia parte demandante en el caso de desahucio), y que por lo tanto, la parte demandante debía pagar a los demandados la suma de $2,175 en concepto de tales rentas, menos $1,430 que habían sido consignados por la demandante al presentar su demanda.

La parte demandante ha apelado ante este Tribunal. Debemos señalar, en primer término, que la parte apelante no ha hecho señalamiento alguno de errores en su alegato. No nos ha colocado en condiciones completamente adecuadas para comprobar específicamente cuáles son sus puntos de vista precisos, ni cuáles son las bases concretas de su ataque a la sentencia. Ello podría justificar a este Tribunal en desestimar la apelación. Pero después de una cabal consideración del alegato de la parte apelante, surge de sus argumentos que el fundamento único y exclusivo de la apelante consiste en el criterio de que en la sentencia que se dictó en el caso de desahucio se resolvió que Rodríguez estaba en un período de lucidez mental cuando hizo el supuesto con-

trato, alegando la parte apelante que la sentencia debe tener el efecto de cosa juzgada, o *res judicata,* en este litigio.

En el caso de *Ramírez* v. *Ramírez Nadal,* 38 D.P.R. 735, 736, el alegato no contenía señalamiento alguno de errores. Se dijo lo siguiente:

"El alegato de los apelantes es breve y tal vez condonaríamos que hayan dejado de cumplir con las reglas de esta corte si estuviésemos convencidos de que la corte inferior ha cometido algún error, o si tuviésemos serias dudas. Sin embargo, hemos examinado la prueba y el alegato, y hemos llegado a la conclusión de que los apelantes no nos convencen de que la sentencia debe ser revocada. En otras palabras, creemos que los apelantes no solamente dejaron de cumplir con las reglas de esta corte, sino también que la apelación es frívola."

En *Penne González, y de la Guerra, Opositor,* 46 D.P.R. 264, se resuelve que, aun cuando en un alegato no se exponga un señalamiento de errores, la apelación podría ser considerada si en el alegato, aunque en forma confusa, se va al fondo del asunto y se exponen las verdaderas cuestiones envueltas en el litigio. Aún si no se hace un señalamiento de errores este tribunal podría, en el ejercicio de su discreción, considerar errores claros o fundamentales que aparezcan del expediente. 4 C.J.S. 1734, sec. 1239.

■■ No estamos convencidos de que se haya cometido error alguno en este caso. Por el contrario, colocándonos en el campo de investigación a que se ha limitado el apelante en este caso, esto es, el alcance y efecto de la sentencia dictada en el caso de desahucio a que hemos hecho referencia, fué correcta la sentencia que ha sido objeto de apelación en este litigio. En el caso de desahucio instado por Rodríguez, a través de un tutor, contra Aurelia Cruz, surgió un conflicto de títulos, motivado precisamente por las alegaciones de las partes en cuanto a la capacidad o incapacidad mental de Rodríguez en la fecha en que se alega que se otorgó el supuesto contrato de venta. La demanda de desahucio se declaró sin lugar debido a la existencia de ese conflicto de títulos. El tri-

bunal, en el caso de desahucio, hizo algunos comentarios en su opinión al efecto de que la prueba había tendido a demostrar que en el momento de hacerse el contrato de venta, Rodríguez tenía suficiente capacidad mental. La parte apelante en este litigio invoca a su favor esos comentarios, y los caracteriza como concluyentes en el caso de autos. Pero lo que indicó el tribunal en el caso de desahucio fué que, de la prueba presentada, el tribunal no podría haber llegado a la conclusión de que Rodríguez estuviese incapacitado al otorgarse el contrato, que si Rodríguez estaba en un período de lucidez al hacerse el contrato, éste sería válido y que él no estaba recluído permanentemente en la clínica, sino que visitaba a su esposa cuando así se lo permitía su enfermedad. Pero el tribunal en el caso de desahucio, terminó diciendo lo siguiente:·

"De todos modos, surge aquí una cuestión que debe ventilarse con más amplitud con todos los elementos de prueba necesarios, en una acción ordinaria, para que el tribunal pueda hacer cumplida justicia. Para nosotros es claro que no es el procedimiento de desahucio el procedimiento adecuado para dirimir cuestiones fundamentales relacionadas con la capacidad de las partes, y más aún, que basta la concurrencia del testimonio de la demandada con otras circunstancias que indiquen una controversia sustancial en cuanto a si las partes envueltas hicieron o no un convenio verbal de compraventa de la propiedad envuelta, para que exista un conflicto de títulos."

El tribunal, en el caso de desahucio, no resolvió definitivamente que Rodríguez tenía suficiente capacidad mental al hacer el contrato. Se limitó a resolver lo único que era necesario para declarar sin lugar la demanda, que existía una controversia auténtica, no sólo en cuanto al hecho en sí de si se otorgó el contrato, sino en cuanto a la capacidad mental de Rodríguez en la fecha y momento en que se alegaba que se hizo el contrato, y que tal controversia daba lugar a un conflicto de títulos. Precisamente debido a la regla que prohibe que se dicte una sentencia de desahucio cuando existe un principio auténtico de prueba que dé lugar a un conflicto de títulos,

esto es, en virtud del campo limitado de investigación que tiene un tribunal en un caso de desahucio, que impide considerar los méritos intrínsecos del caso, es que se ha establecido la regla, aplicable a este caso, al efecto de que una sentencia en un caso de desahucio no constituye *res judicata* en un juicio plenario u ordinario posterior. *Virella* v. *Virella*, 23 D.P.R. 693; *Ortiz* v. *Aguayo*, 26 D.P.R. 735; *Pesquera* v. *Fernández*, 16 D.P.R. 236; *Banco Territorial y Agrícola* v. *Arvelo*, 7 D.P.R. 566. Por analogía, debemos reiterar lo que se indica en *Lluberas* v. *Mario Mercado e Hijos*, 75 D.P.R. 7, 18, en la forma siguiente:

"La misma (sentencia de desahucio) se fundó en el hecho de que ésta (la demandada) planteó una serie de cuestiones complicadas que tendían a impugnar seriamente la eficacia del título de los demandantes y en que el procedimiento sumario de desahucio no era el apropiado para dirimir tales cuestiones. Esa sentencia no resolvió, sin embargo, que la demandada tenía derecho a la posesión . . . . Meramente resolvió, repetimos, que la eficacia del título de los demandantes había sido impugnada seriamente y que el desahucio no era el procedimiento adecuado para resolver las cuestiones suscitadas."

No tiene razón, por lo tanto, la parte apelante al alegar que la opinión y sentencia en el caso de desahucio eran concluyentes, o constituía cosa juzgada, en cuanto a la cuestión relativa a la capacidad mental de Rodríguez al hacerse el contrato. Una sentencia no es concluyente en relación a una cuestión que, en vista de la naturaleza del caso, no podía ser adjudicada en el caso en que se emitió. *Ash Sheep Co.* v. *United States*, 252 U. S. 159; *Davis* v. *First National Bank of Waco*, 161 S.W.2d 467; Black, *Judgments*, vol. 2, pág. 944, sec. 618, segunda ed.

■■ Considerando un aspecto relevante de este litigio, la tesis planteada en la demanda es al efecto de que, aunque Rodríguez estaba incapacitado mentalmente al hacer el contrato de venta él estaba en un período de lucidez mental. La demandante no presentó prueba directa alguna en este litigio sobre tal extremo. Se limitó a presentar la transcripción de

la evidencia practicada en el caso de desahucio, y el expediente de ese caso. Las declaraciones de los testigos en el caso de desahucio no eran admisibles en el caso de autos, ya que no cumplían, generalmente, con los requisitos del inciso 6 del art. 35 de nuestra Ley de Evidencia, que dispone que podrá presentarse en un juicio evidencia del testimonio de un testigo *que hubiere fallecido o se hallare fuera de la jurisdicción, o estuviere imposibilitado para testificar*, prestado en una causa anterior entre las mismas partes y referente al mismo asunto. ("relating to the same subject matter", en su texto inglés). Aún suponiendo que la acción de desahucio se refiriese al mismo asunto aquí envuelto, *Cf. Fredericks v. Judah*, 73 Cal. 604, 608, sobre desahucio, la única testigo que declaró en el juicio de desahucio y que falleció antes de la vista en este caso, y que ha cumplido con todos los requisitos de la disposición citada, fué Aurelia Cruz, quien declaró que Rodríguez estaba loco y que al otorgar el contrato él estaba "medio ido". La parte demandante, por lo tanto, no probó, en este caso, que Rodríguez estuviese en un período de lucidez mental al otorgar el contrato. En cuanto a una persona previamente incapacitada, en forma permanente, o recluída como loca, debe probarse afirmativamente que en un momento posterior ella tenía lucidez mental, ya que, en ese caso, se presume la continuación de la demencia anteriormente reconocida. Manresa, tomo 8, pág. 387, 388, 5a. edición. *Sovereign Camp, W.O.W.* v. *Ellis*, 1 S.E.2d 677; *Schmidt* v. *Edmonds, et al.*, 64 N.E.2d 241; *Davidson* v. *Piper*, 265 N.W. 107; *Davis* v. *Davis*, 25 S.E.2d 181; *Lee* v. *Stephens*, 50 N.E.2d 622; *Turley* v. *Turley*, 30 N.E.2d 64; *Crager* v. *West Hoboken Transfer & Express Co.*, 41 A.2d 806; *In re Miller's Estate*, 116 P.2d 526; Cf. *Valiente & Co.* v. *Sucn. Fuentes*, 45 D.P.R. 617 y 51 D.P.R. 327; *Valiente & Co.* v. *Corte*, 52 D.P.R. 732.

*Debe confirmarse la sentencia apelada.*

El Juez Asociado Sr. Belaval no intervino.