Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| SUCESIÓN RUIZ RODRÍGUEZ COMPUESTA POR NORBERTO RUIZ CASIANO, MARIELA RUIZ CASIANO, HERIBERTO RUIZ NEGRÓN Y LIZNOI RUIZ FELICIANO<br><br>Apelados<br><br>v.<br><br>EVELIO OLIVERAS MARTÍNEZ<br><br>Apelante | TA2025AP00509 | APELACIÓN procedente del Tribunal de Primera Instancia, Sala Superior de Yauco en Sabana Grande<br><br>Civil núm.: YU2024CV00341<br><br>Sobre: Desahucio |

Panel integrado por su presidente el juez Hernández Sánchez, el juez Rivera Torres y el juez Marrero Guerrero.

**Rivera Torres, Juez Ponente**

**SENTENCIA**

En San Juan, Puerto Rico, a 12 de diciembre de 2025.

Comparece ante este tribunal apelativo, el Sr. Evelio Oliveras Martínez (señor Oliveras Martínez o el apelante) mediante el recurso de apelación de epígrafe solicitándonos que revoquemos la *Sentencia Enmendada* emitida por el Tribunal de Primera Instancia, Sala Superior de Yauco (TPI), el 27 de octubre de 2025, notificada ese mismo día. Mediante este dictamen, el foro primario declaró *Ha Lugar* a la demanda de desahucio instada por la Sucesión Ruiz Rodríguez compuesta por Norberto Ruíz Casiano, Mariela Ruíz Casiano, Heriberto Ruíz Negrón y Liznoi Ruíz Feliciano (en conjunto, los apelados). En consecuencia, ordenó el lanzamiento del señor Oliveras Martínez de las propiedades objeto del presente caso en el término de veinte (20) días.

A su vez, el foro *a quo* ordenó a los apelados, con excepción de la menor Liznoi Ruiz Feliciano, en igual plazo, devolver al apelante los $1,000 que este les pagó por la opción de compra.

Por los fundamentos que expondremos a continuación, determinamos confirmar el dictamen apelado.

**I.**

El 26 de junio de 2024, la Sucesión Ruiz Rodríguez compuesta por Norberto Ruíz Casiano, Mariela Ruíz Casiano, Heriberto Ruíz Negrón y Liznoi Ruíz Feliciano instó una demanda sobre desahucio en contra del señor Oliveras Martínez.[1] En esta, se alegó que los apelados son propietarios de los lotes de terreno núms. 7, 8, y 9 ubicados en el Barrio Susúa Alta, sector La Palmita, en el pueblo de Yauco. En el lote núm. 9 está ubicada una residencia de concreto. Se indica que el 22 de enero de 2021, las partes suscribieron un contrato de alquiler con Opción de Compra por dichos lotes con fecha de vencimiento del 31 de diciembre de 2023. El canon de arrendamiento convenido fue de $1,000 mensuales.

Se adujo que en el convenio se estipuló la Cláusula F, mediante la que se estableció que: "Antes de terminar el término de este contrato las partes notificarán con treinta (30) días de anticipación si desean prorrogar el contrato sujeto a los términos que los contratantes tuvieren a bien acordar en su día, luego de expirado el presente contrato para la cual deberán suscribir un nuevo contrato."

A base de dicha cláusula, los apelados, mediante carta del 8 de noviembre de 2023, le comunicaron al señor Oliveras Martínez la decisión de no renovar el contrato. Por lo que, le solicitaron la

---

[1] En el *Emplazamiento y Citación por Desahucio* expedido el 1 de julio de 2024 se establece que el pleito se tramita bajo el procedimiento sumario según dispuesto en el Código de Enjuiciamiento Civil, *infra*. Véase, el Sistema Unificado de Manejo y Administración de Casos del TPI (SUMAC TPI), Entrada núm. 3.

entrega de los lotes para el 1 de enero de 2024, pero este se negó a entregar las propiedades.

Así, los apelados le peticionaron al TPI que declare *Ha Lugar* a la demanda y ordene el desalojo, y el lanzamiento del apelante. Además, que lo condene al pago de costas, gastos y honorarios de abogado.

El 12 de julio de 2024, el apelante presentó la contestación a la demanda en la que aceptó algunas alegaciones y negó otras. Arguyó que, entre las partes, se formalizó un contrato de Arrendamiento con Opción de Compra y el 11 de noviembre de 2023, antes de su vencimiento, este la comunicó al representante legal de los apelados, la intención de ejercitar la Opción de Compra. Añadió que, al ser informado sobre la no renovación del contrato, envió una comunicación para ejercitar la Opción de Compra de los lotes y los apelados se han negado a cumplir con la venta de los inmuebles. Por lo que, son ellos los que han obstruido su derecho para formalizar el derecho de Opción de Compra sobre las propiedades y estos están obligados a vendérselas. Mencionó, además, que en la residencia vive una menor de edad, nieta, de su pareja consensual.

En atención a lo antedicho, el apelante le solicitó al tribunal que denegara la demanda. Asimismo, este incluyó varias defensas afirmativas.

El 12 de agosto de 2024, el foro apelado celebró la vista de juicio *vía Zoom de forma remota.* De la *Minuta*[2] surge que el foro primario escuchó las argumentaciones de los abogados y tomó conocimiento judicial de que en este caso "habría que nombrar un defensor judicial; por lo que, siendo así, se le CONCEDE el término de diez (10) días solicitados por la parte demandante para presentar la prueba y para anunciar el defensor (a) judicial en cuanto a dicha

---

[2] Véase, el Sistema Unificado de Manejo y Administración de Casos del TPI (SUMAC TPI), Entrada núm. 10.

menor miembro de la Sucesión." Además, reseñaló la vista en su fondo para el 30 de septiembre de 2024, a las 2:00 de la tarde, mediante videoconferencia.

Luego de varias incidencias procesales, que incluye la confirmación por el TPI del Lcdo. Melvin I. Martínez Almodóvar, como defensor judicial de la menor, mediante la Orden del 18 de octubre de 2024, notificada el 28 posterior, el 11 de marzo de 2025 se celebró la vista a la que comparecieron las partes y sus abogados; así como el defensor judicial. De la *Minuta*[3] surge que:

> **El tribunal expresa que la causal es por incumplimiento y es el tribunal quien debe dilucidar, si procede o no el desahucio**. A menos y ha dado el espacio a las partes de poder reunirse y determinar si es una alternativa llegar a un acuerdo de transacción. Que, si no se ha informado ello en el día de hoy, debe entender el tribunal que los procedimientos [*sic*]. El tribunal concluye que, puede tomar conocimiento judicial sobre la resolución de la declaratoria de herederos. Que las partes aceptan que hubo un contrato que se acompaña y el tribunal viene obligado a interpretar el contrato para determinar estrictamente, si procede el desahucio solicitado y las comunicaciones cursadas entre las partes con el propósito e información que se incluyó para efectos de este procedimiento.
>
> …
>
> El licenciado Pacheco informa que, estuvieron conversando los abogados. **Entiende que son más aspectos de derecho y entiende que se puede resolver con los documentos sometidos, admitidos y estipulados por las partes o la alternativa de un memorando de derecho o una argumentación oral**. El tribunal va a escuchar la posición de la otra parte y el defensor judicial. **El licenciado Troche informa que cualquiera de ambas vías puede ser posible para finiquitar el asunto de este caso**. Que el licenciado Pacheco le había hablado de unos términos para proceder en otra vista.
>
> …
>
> El tribunal indica que se ha trabajado con la prueba documental presentada, sin objeción o estipulado por las partes. **El tribunal ordena que el Contrato de Arrendamiento con Opción a Compra, se marque como Exhibit I estipulado. Se toma conocimiento judicial sobre la Resolución de la Declaratoria de Herederos y el tribunal ordena que se marque como Exhibit II, estipulado. En cuanto a la Carta de no Renovación de Contrato, sin oposición de las demás partes, el tribunal ordena que se marque como Exhibit 1, de la parte**

---

[3] SUMAC TPI, Entrada núm. 19. Énfasis nuestro.

**demandante. La carta fechada el 11 de noviembre de 2024 {*sic*}, el tribunal ordena que se marque como Exhibit A, de la parte demandada. Que con toda la prueba, se simplifica el trámite.**

Ya debidamente marcada la evidencia y atendida la misma con el defensor judicial, el tribunal entiende que, conforme a las alegaciones, el tribunal autoriza el término de 15 días para comparecer por escrito, ya sea de forma conjunta o presentando por separado sus respectivos argumentos.

**El tribunal hace referencia a las alegaciones de la demanda y solicita a los abogados que informen si están aceptadas.** Luego de leer las alegaciones de la demanda, el tribunal solicita a los abogados que informen si el tribunal debe entender que los lotes al día de hoy están en posesión de la parte demandada. El licenciado Pacheco indica que de su parte sí, pero que el licenciado Troche lo exprese. El licenciado Troche acepta y manifiesta que también deben de hacer mención de las contestaciones a la demanda.

El tribunal señala que, están de acuerdo los abogados que son hechos incontrovertidos, por lo menos hasta la alegación Núm. 10 de la demanda.[4] **Que lo que está en controversia sería con relación a la ocupación de estos predios, las razones por las cuáles la parte demandante reclama la devolución de los predios y la parte demandada permanece en los predios, con las defensas que expone. Que allí estribaría la controversia en este caso, si procede o no la demanda de desahucio y el lanzamiento que solicita la parte demandante.** El tribunal hace referencia a las alegaciones de la contestación a la demanda, en específico a la Núm. 10, la cual da por corregida y procede a leer la misma para récord y luego procede a leer de la 11 a la 14. Solicita al licenciado Troche que exponga si hay menores, adultos mayores o personas incapaces en la propiedad.

...

El tribunal señala que en los quince días que ha dado, los abogados tienen el deber de aclarar los asuntos **y comparecer por escrito, para poner al tribunal en posición de dictar sentencia por las alegaciones. Si transcurrido el término, subsisten controversias que ameriten desfilar testimonio, sería convocada la vista evidenciar[i]a.**

Surge, además, que el tribunal señaló el juicio en su fondo para el 10 de junio de 2025, a las 10:00 a.m., en caso de tener que celebrar vista.

---

[4] Advertimos que en la alegación núm. 3 los apelados arguyeron que "3. La parte demandante es propietaria de tres lotes de terreno ubicados en el Barrio Susúa Alta, Sector La Palmita Kilómetro 10.4 del término municipal de Yauco." En la *Contestación a Demanda* instada por el señor Oliveras Martínez se aceptó la misma.

En cumplimiento con lo ordenado en la vista el 26 de marzo de 2025, el señor Oliveras Martínez presentó un *Memorando de Derecho*[5] en el que argumentó que, en el contrato suscrito entre las partes, se le otorgó a él, como Parte Optante, el derecho exclusivo para que ejerciera la Opción de Compra lo que podía realizar hasta el 31 de diciembre de 2023. Así lo hizo, mediante la comunicación del 11 de noviembre de 2023, es decir, dentro del plazo fijado en el contrato.

Agregó que, previo a que el ejercitara la Opción de Compra, los apelados en la carta de su abogado, le notificaron la intención de no renovar el Contrato de Opción y sin considerar que el plazo para ejercer la opción no había caducado o transcurrido. Por ello, reafirmó que son los apelados quienes no han querido o han impedido que él pueda adquirir los lotes en controversia, negándose a venderle y utilizando el procedimiento de desahucio. Indicó que siempre ha cumplido con los cánones de arrendamiento pactados e incluso ha seguido pagando los mismos.

Ese mismo día los apelados incoaron un escrito intitulado *Argumentación Partes Demandantes*[6] en el que expusieron que conforme con la cláusula Sexta, inciso F, el 8 de noviembre de 2023, cursaron una comunicación al señor Oliveras Martínez. En la misma le notificaron que, al expirar la vigencia del contrato no, estarían llevando a cabo una extensión o renovación del pacto. También indicaron que el contrato no menciona que aún en circunstancias en que el Optante ejerciera la Opción de Compra antes de su vencimiento, tal acción debía interpretarse como una extensión. "Por lo cual la cláusula de Opción de Compra no subsiste luego del 31 de diciembre de 2023. Para lo cual debieron firmar un nuevo contrato. Esto último no sucedió por la voluntad de las partes demandantes.

---

[5] SUMAC TPI, Entrada núm. 20.
[6] SUMAC TPI, Entrada núm. 21.

Pues no se trata de un pleito de titularidad. Mas que otra cosa, la parte demandada unilateralmente ha pretendido extender el acuerdo, privando a sus legítimos dueños del uso y disfrute de su propiedad. Le ha impedido ejercer las prerrogativas que como dueños le corresponden. Ha tenido el efecto de una incautación."

Al día siguiente, el licenciado Martínez Almodóvar, defensor judicial de la menor Liznoi Ruiz Feliciano, presentó una moción en la que, entre otros asuntos, especificó que al "otorgar el contrato efectuado por los dem[á]s demandantes y demandados evidentemente no se contempl[ó] la minoridad de la compareciente la cual carec[í]a de capacidad legal para llegar a ning[ú]n pacto sobre disposici[ó]n de bienes sin que mediara una autorizaci[ó]n judicial." "Que al tenor de ello según lo alegado por las partes la nulidad ab initio del contrato en cuanto a esta salta a la vista por lo que las partes en este proceso no tienen un contrato v[á]lido al menos en cuanto a esta, que al momento de concretarse el mismo no ten[í]a, ni al presente tiene la capacidad legal ni jur[í]dica para la disposici[ón de sus bienes." Añadió que "... por otro lado entendemos que el desahucio incoado procede como cuesti[ó]n de derecho por raz[ó]n de que el contrato de arrenda[m]iento est[á] vencido según lo alegado por las partes, aun cuando se tomara como un acto de administraci[ó]n por los herederos, adolece de la misma falta de capacidad para contratar y se trata de un contrato que ser[í]a anulable y/o inexistente en cuanto a esta."[7]

Analizados los referidos escritos, el 29 de septiembre de 2025, notificada el 2 de octubre siguiente el TPI, esta vez por voz del Hon. Jesús Antonio Rodríguez Urbano, emitió una *Sentencia*. El 27 de octubre de 2025, notificada el 29 siguiente, el tribunal emitió la *Sentencia Enmendada* apelada.[8] El foro de instancia aclaró que

---

[7] SUMAC TPI, Entrada núm. 22.
[8] SUMAC TPI, Entrada núm. 30, a las págs. 4-7.

enmendó el dictamen para fijar la fianza de $4,000 al tenor con el ordenamiento jurídico.

El TPI esbozó catorce (14) determinaciones de hechos incontrovertidos y aclaró que "[l]as Determinaciones de Hechos número 1 a la 7 son los hechos núm. 3 al 10, según alegados por la parte demandante en la Demanda y que fueron aceptados por la parte demandada en su Contestación a la Demanda. El resto de las determinaciones de hechos surgen de la prueba documental estipulada".[9] A base de estas, el foro primario declaró *Ha Lugar* a la demanda de desahucio instada por los apelados. Por lo que, ordenó el desalojo del señor Oliveras Martínez de las propiedades en el término de veinte (20). Asimismo, ordenó a los apelados, con excepción de la menor Liznoi Ruiz Feliciano, en igual plazo, devolver al apelante los $1,000 que este les pagó por la opción de compra. También, como mencionamos, impuso una fianza de $4,000 que corresponda por los daños que se puedan ocasionar a los apelados y las costas en apelación.

De igual manera, el foro *a quo* razonó, en lo que concierne a la controversia medular sobre si procede o no el desahucio, que:[10]

...

> De conformidad con las disposiciones del Art. 346 del Código Civil, 31 LPRA § 6316, procede que los demandantes, excluyendo a la menor Ruiz Feliciano, devuelvan la prima que pagó el demandado por la opción.

---

[9] Véase, la nota al calce núm. 4. Resulta ser una norma conocida en nuestro ordenamiento jurídico que "[las] estipulaciones son admisiones judiciales que implican un desistimiento formal de cualquier contención contraria a ellas". *Rivera Menéndez v. Action Service*, 185 DPR 431, 439 (2012); *Mun. De San Juan v. Prof. Research*, 171 DPR 219, 238 (2007). Estas, son favorecidas "porque eliminan desacuerdos, y de esa forma, facilitan y simplifican la solución de controversias jurídicas". *Rivera Menéndez v. Action Service*, supra; *Díaz Ayala et al. v. ELA*, 153 DPR 675, 693 (2001). Por ende, "las estipulaciones son herramientas esenciales en las etapas iniciales del proceso judicial y su uso es promovido por las Reglas de Procedimiento Civil". *Rivera Menéndez v. Action Service*, supra.

Además, cuando se trata sobre admisiones de hechos ello tiene el efecto de dispensar a la parte de probar tales hechos. Es decir, "cuando se admite o estipula un hecho, la parte está relevada de probarlo". *Rivera Menéndez v. Action Service*, supra; *Díaz Ayala et al. v. ELA*, supra. Por lo que, esta modalidad de estipulación sustituye la prueba que se presentaría en la vista del caso.

[10] SUMAC TPI, Entrada núm. 30, a las págs. 15-18. Notas al calce omitidas. Énfasis nuestro.

**El contrato de arrendamiento, por tratarse de un acto de administración, no adolece de nulidad radical y, por ende, surtió efectos durante la vigencia del negocio jurídico, es decir hasta el 31 de diciembre de 2023**. **Habiéndose notificado oportunamente que los demandantes no renovarían el contrato de arrendamiento a la parte demandada, este debió entregar las propiedades inmuebles el 1 de enero de 2024. A partir de entonces este no contaba con justificación posesoria alguna, por lo que adquirió la condición de precarista**. **El hecho de que este continuara pagando los cánones de arrendamiento, como si el negocio jurídico se hubiese renovado, no tuvo efecto jurídico alguno, pues ya se había notificado que no se renovaría el contrato. Recordemos que de acuerdo con los propios términos del contrato de arrendamiento se requería el acuerdo de todas las partes para que se renovara el negocio jurídico. De hecho, esa opción de renovar no cumplía con los requisitos doctrinales, pues lejos de depender meramente de la voluntad del optante (opción de renovar) para su ejercicio, dependía de un nuevo acuerdo de voluntades de las partes**. Cf. Mayagüez Hilton, 156 DPR en la pág. 247.

...

De la prueba estipulada por las partes, queda demostrado que entre las partes se suscribió un Contrato de Arrendamiento con Opción a Compra cuyo término era de dos años. **De dicho contrato se desprende que las partes acordaron que "[a]ntes de terminar el término de este contrato, las partes notificarán con treinta días de anticipación si desean prorrogar el contrato sujeto a los términos que los contratantes tuvieren a bien acordar en su día, luego de expirado el presente contrato, para lo cual deberán suscribir un nuevo contrato". Así mismo, de la prueba se establece que la parte demandante, para el 8 de noviembre de 2023, por medio de su representante legal le comunicó a la parte demandada que "no deseaban renovar o extender el acuerdo luego de su vencimiento el 31 de diciembre de 2023". Posteriormente, el 11 de noviembre de 2023, la parte demandada, por medio de su abogado, le comunica a los demandantes su deseo de ejercitar la opción de compra. Sin embargo, como advertimos previamente ese negoció jurídico adolece de nulidad radical, por lo que no surtió efecto alguno**. Ver Guzmán v. Guzmán, 78 DPR 673, 682 (1954); Ríos v. Municipio de Isabela, 159 DPR 839, 848 (2003).

**En el caso que nos ocupa, la intención de renovar o no el contrato de arrendamiento no se atribuyó a una de las partes en específico, sino que cualquiera de los contratantes podía comunicar su deseo de renovar o no el contrato por un término posterior.** Dicha comunicación fue realizada por la parte demandante el 8 de noviembre de 2023 con su intención de no prorrogar el contrato; por lo que desde ese momento ya la parte demandada conocía que el contrato tendría fin una vez llegara la fecha establecida de terminación del contrato, es decir el 31 de diciembre de 2023. Sin embargo, la parte demandada, posterior a

la comunicación habida por la parte demandante, comunicó su intención de ejercer la opción a compra. No obstante, ese "ejercicio" no surtió efecto alguno, pues como hemos resuelto el contrato de opción es nulo por no haber mediado autorización judicial.

**Ante esto, este Tribunal concluye que habiéndose notificado oportunamente la no extensión o prórroga del contrato de arrendamiento una vez llegara la fecha del 31 de diciembre de 2023, desde entonces el demandado no tenía derecho a poseer los inmuebles**. El hecho de que este invocara su derecho a la opción de compraventa no tuvo efecto alguno dada la nulidad radical de dicho negocio jurídico. **Por lo tanto, los demandantes se han visto interrumpidos en su derecho a poseer y disfrutar de su propiedad y procede, como cuestión de derecho, la acción de desahucio.** ATPR, 196 DPR en la pág. 9.

El 29 de octubre, el apelante presentó una *Urgentísima Moción de Nuevo Juicio y en Solicitud de Relevo de Sentencia por Falta de Jurisdicción sobre la Materia*.[11] En esta, argumentó que el caso mantuvo el procedimiento sumario hasta la notificación de la sentencia, por lo que no hubo conversión a pleito ordinario. Al respecto, arguyó que dos instancias provocan la nulidad de la sentencia y la celebración de un nuevo juicio. Entiéndase, por ser una acción sumaria de desahucio regulada por el Código de Enjuiciamiento Civil, Artículos 620-634, y por existir un conflicto de títulos amparado en la doctrina de *Cruz v. Bruno*, 76 DPR 966 (1954).

Añadió que el "relevo de sentencia por la nulidad de sentencia por falta de jurisdicción sobre la materia priva a este tribunal de declarar nulo radical la presente opción de compraventa, toda vez que lo único en atender el tribunal en un asunto sumario de desahucio es sobre la posesión de hecho del bien y su lanzamiento. Cualquier otra acción y/o remedio, debe ser atendida en un asunto ordinario." Por su parte, el apelante peticionó que se le impusiera una fianza que sea menor a la establecida, por $500, para que pueda ejercer su derecho de apelación.

---

[11] SUMAC TPI, Entrada núm. 33.

En la misma fecha, el señor Oliveras Martínez presentó un escrito para suplementar la anterior moción aludiendo a lo resuelto por el Tribunal Supremo en el caso *Markovic V. Meldon*, 2025 TSPR 99.

Mediante la Resolución emitida y notificada el 29 de octubre de 2025 el TPI declaró *No Ha Lugar* a los mencionados petitorios. Además, denegó el pedido para reducir la fianza.

Todavía en desacuerdo, el 31 de octubre de 2025, el apelante instó una *Urgentísima Moción de Reconsideración y en Solicitud de Nulidad de Sentencia por Falta de Parte Indispensable y en Solicitud de Conocimiento Judicial*[12] en la que adujo que el expediente carece de documentos de titularidad, que los apelados no son los propietarios de las propiedades (lotes núm. 7 y 8), y que faltan partes indispensables respecto a la titularidad del lote núm. 9. El petitorio fue denegado por el foro revisado mediante una Resolución emitida y notificada el 31 de octubre.

Inconforme aún, el apelante acude ante este tribunal intermedio imputándole al foro primario haber incurrido en los siguientes errores:

> ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR CON LUGAR LA PRESENTE DEMANDA DE DESAHUCIO Y COMO CONSECUENCIA DECLARAR NULO AB INITIO EL CONTRATO DE OPCIÓN A COMPRAVENTA EN UN PROCEDIMIENTO SUMARIO.
>
> ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR EN DERECHO Y DECLARAR NULO AB INITIO RADICAL EL CONTRATO DE OPCIÓN DE COMPRAVENTA FUNDAMENTADA POR LA EXISTENCIA DE UNA PARTICIPACIÓN DE UNA MENOR DE EDAD EN LOS INMUEBLES SIN HABER OTORGADO EL CONTRATO DE ARRENDAMIENTO CON OPCIÓN DE [COMPRAVENTA] BAJO AUTORIZACIÓN JUDICIAL.
> ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR COMO UN HECHO INCONTROVERTIBLE QUE LA PARTE DEMANDANTE-APELANTE ES TITULAR DE LOS

---

[12] SUMAC TPI, Entrada núm. 42.

PREDIOS Y QUE ESTÁN [EJERCIENDO] UNA ACCIÓN DE ADMINISTRACIÓN DE LAS FINCAS 18139, 18140 Y 18141.

ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR NO HA LUGAR LA MOCIÓN DE NUEVO JUICIO Y RELEVO DE SENTENCIA POR NO OSTENTAR JURISDICCIÓN SOBRE LA MATERIA Y POR CONSIGUIENTE SER NULA LA SENTENCIA POR ATENDER EN UN JUICIO SUMARIO LA NULIDAD CONTRACTUAL.

ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR NO HA LUGAR LA RECONSIDERACIÓN Y SOLICITUD DE NULIDAD POR FALTA DE PARTE INDISPENSABLE POR NO SER LOS DEMANDANTES-APELADOS TITULARES REGISTRALES SEGÚN DEFINIDO EN *LÓPEZ GARCÍA VS. LÓPEZ GARCÍA,* 200 DPR 50.

El 4 de noviembre de 2025, emitimos una *Resolución* concediendo a los apelados hasta el 3 de diciembre de 2025 para expresarse. Llegado esta fecha, se cumplió con lo ordenado. Así, nos damos por cumplidos, y a su vez, decretamos perfeccionado el recurso.

Analizados los escritos de las partes y el expediente apelativo; así como estudiado el derecho aplicable, procedemos a resolver.

## II.

### Procedimiento sumario de desahucio

El desahucio es un procedimiento especial de naturaleza sumaria cuyo objetivo principal es recuperar la posesión material de una propiedad inmueble mediante el lanzamiento o expulsión del arrendatario o precarista que la detente. *Mora Dev. Corp. v. Sandín,* 118 DPR 733, 749-750 (1987); *C.R.U.V. v. Román,* 100 DPR 318, 321 (1971). Nuestro más alto foro ha reiterado jurisprudencialmente que el desahucio es "uno de los procedimientos más utilizados en nuestro país para reivindicar, mediante trámite y juicio sumario, la posesión y el disfrute de un inmueble." *Turabo Ltd. Partnership v. Velardo Ortiz,* 130 DPR 226, 234-235 (1992).

Así, el desahucio es el procedimiento especial que tiene el dueño de una finca, sus apoderados, los usufructuarios u otra

persona con derecho a disfrutarla, para recuperar la posesión de un inmueble. *Markovic v. Meldon y otro*, 2025 TSPR 99, 216 DPR ___ (2025); *Adm. Vivienda Pública v. Vega Martínez*, 200 DPR 235 (2018). El objetivo del desahucio es devolverle la posesión de hecho de un inmueble al dueño mediante el lanzamiento del arrendatario o precarista que detenta la propiedad sin pagar el canon correspondiente. *ATPR v. SLG Volmar-Mathieu*, 196 DPR 5, 10 (2016). El proceso correspondiente al desahucio sumario está reglamentado conforme lo dispuesto en los Artículos 620-634 del Código de Enjuiciamiento Civil, 32 LPRA secs. 2821-2838.

Las controversias que pueden ventilarse en este procedimiento sumario son limitadas. De manera que lo único que se intenta recobrar, mediante la referida acción sumaria, es la posesión del inmueble. *Markovic v. Meldon y otro,* supra. Los conflictos sobre la titularidad no pueden dilucidarse en un procedimiento de desahucio. *Íd.*

Por otro lado, nuestro ordenamiento jurídico reconoce que los foros judiciales gozan discreción para convertir el procedimiento de desahucio en uno ordinario, prorrogar términos, posponer señalamientos e, incluso, para permitir enmiendas en las alegaciones. *Turabo Ltd. Partnership v. Velardo Ortiz, supra,* a la pág. 241. Tras una orden que convierta la reclamación a un proceso ordinario, esta estará sujeta a las reglas de litigación civil ordinaria.

**III.**

El apelante expuso que erró el TPI al declarar con lugar la presente demanda de desahucio y como consecuencia declarar nulo *ab initio* el contrato de opción a compraventa en un procedimiento sumario. Además, que el tribunal incidió al determinar en derecho y declarar nulo *ab initio* radical el contrato de opción de compraventa fundamentada por la existencia de una participación de una menor

de edad en los inmuebles sin haber otorgado el contrato de arrendamiento con opción de compraventa bajo autorización judicial. A su vez, señaló que el foro apelado falló al razonar, como un hecho incontrovertible, que la parte apelada es titular de los predios y que ejercen una acción de administración de las fincas 18139, 18140 y 18141.

Asimismo, indicó que el foro *a quo* actuó incorrectamente al declarar no ha lugar a la moción de nuevo juicio y relevo de sentencia por no ostentar jurisdicción sobre la materia y por consiguiente ser nula la sentencia por atender en un juicio sumario la nulidad contractual. Por último, manifestó que erró el tribunal primario al declarar no ha lugar a la reconsideración y a la solicitud de nulidad por falta de parte indispensable, al no ser los apelados los titulares registrales de las propiedades.

Respecto a los errores primero y segundo se hace indispensable subrayar que el foro primario no entró a dilucidar conflictos de título, ya que el apelante falló en ponerlo en condición para dicho proceder. Más bien, el tribunal analizó el contrato *Arrendamiento con Opción a Compra* el cual constituye el negocio jurídico suscrito entre las partes y por el que, acorde con lo estipulado, se solicita el desahucio. En este sentido, reiteramos que no surge de la *Sentencia Enmendada* apelada ni de ninguna instancia procesal del expediente electrónico que el señor Oliveras Martínez haya presentado algún documento que le confiriera titularidad sobre las propiedades objeto del contrato. La carta del 11 de noviembre de 2023 que el abogado del señor Oliveras Martínez remitió a los apelados no es fuente jurídica para así ser considerado. Esto, máxime cuando tres días antes, 8 de noviembre, los apelados le enviaron una misiva en la que, **conforme a la facultad otorgada a cualesquiera de las partes en el contrato**, informaron su intención de no renovar el mismo. Por tanto, no existe un conflicto

de titularidad que el juzgador viniera obligado a dirimir en un procedimiento ordinario.

Recordemos, además, que el caso quedó sometido para la disposición del tribunal por las alegaciones y el expediente, según acordado por las partes y así reconocido ante nos. Esto, conforme se especificó en la Minuta de la vista celebrada el 11 de marzo de 2025, en la que diáfanamente se establece que el TPI aclaró que la controversia a atender es si procede o no la demanda de desahucio y el lanzamiento que solicitan los apelados. Lo que fue aceptado por el apelante en el recurso. Así pues, destacamos que el desahucio no es una de las formas de terminar el arrendamiento, sino un medio de recobrar judicialmente el inmueble arrendado, cuando este se acaba por la concurrencia de ciertas causas extintivas. Esta acción tiene un carácter resolutorio del contrato. *Mora Dev. Corp. v. Sandín*, supra.

Asimismo, es menester enfatizar que en *Markovic v. Meldon y otro,* supra, el Tribunal Supremo reiteró la normativa de que las controversias que pueden ventilarse en el procedimiento sumario de desahucio son limitadas. De manera que lo único que se intenta recobrar, mediante la referida acción sumaria, es la posesión del inmueble. **Los conflictos sobre la titularidad no pueden dilucidarse en un procedimiento de desahucio sumario**. En este sentido, cualesquiera alegaciones argüidas por el señor Oliveras Martínez que verse sobre el incumplimiento de contrato por los apelados, la validez de este y la eficacia de haber ejercido en tiempo el derecho como optante, deberán ser atendidas en un procedimiento ordinario independiente.

Ahora bien, sobre los errores tercero, cuarto y cinco debemos apuntalar que el caso ante el TPI siempre mantuvo la naturaleza sumaria según surge del SUMAC, lo cual reconocen las partes en sus escritos ante nos. Por lo que, los recursos de la Reglas 47 y 49.2

de las de Procedimiento Civil, 32 LPRA Ap. V. Rs. 47 y 49.2, resultan ser incompatibles con este proceso sumario. Ello, aun cuando el foro primario haya resuelto los petitorios sin afectar o ampliar el término de cinco (5) años que se cuenta para instar el recurso de apelación ante esta *Curia,* según mandata el Artículo 629 del Código de Enjuiciamiento Civil, 32 LPRA sec. 2831. *TPR v. SLG Volmar-Mathieu,* 196 DPR 5, 15 (2016). Todavía así, a nuestro entender, resultan ser determinaciones inoficiosas.

Recalcamos que las mociones presentadas con posterioridad a la *Sentencia Enmendada* apelada, como una solicitud de reconsideración o de nuevo juicio, resultan incompatibles con la esencia y el propósito del mecanismo sumario del desahucio. Recordemos que nuestro más alto foro ha dictaminado reiteradamente que, aceptar una moción de reconsideración en procedimientos sumarios, representaría una extensión del trámite, incompatible con la finalidad de los mismos. Véase, *Patiño Cirino v. Parador Villa Antonio*, 196 DPR 439 (2016) y *Medina Nazario v. McNeill Healthcare LLC*, 194 DPR 723 (2016).

En fin, el foro *a quo* no cometió los errores imputados.

**IV.**

Por los fundamentos antes expuestos, determinamos confirmar la *Sentencia Enmendada* apelada.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones