WORLDWIDE FOOD DISTRIBUTOR, INC., demandante y recurrida, v. ALBERTO COLÓN BERMÚDEZ e HILDA ZAMBRANA, por sí y en representación de la SOCIEDAD LEGAL DE GANANCIALES constituida por ellos, demandados y recurrentes.

Número: CE-92-244          Resuelto: 30 de junio de 1993

*José Francisco Chaves Caraballo*, abogado de los recurrentes; *Peter Ortiz*, abogado de la recurrida.

El Juez Presidente Señor Andréu García emitió la opinión del Tribunal.

Se recurre en el presente caso por la negativa del tribunal de instancia a desestimar sumariamente una demanda de cumplimiento específico de contrato y daños y perjuicios sobre la premisa de que la sentencia dictada en un procedimiento de desahucio entre las mismas partes no puede tener el efecto de cosa juzgada en este nuevo pleito por supuestamente impedirlo este Tribunal de acuerdo con lo resuelto en los casos *Cesaní v. Carlo*, 86 D.P.R. 407 (1962), y *Cruz v. Bruno*, 76 D.P.R. 966 (1954). Concedimos un término a la recurrida para que mostrara causa por la cual no debíamos expedir el auto solicitado, revocar la resolución recurrida y decretar la desestimación sumaria de la demanda presentada. Así lo ha hecho la recurrida, por lo que estamos en condiciones de resolver la cuestión planteada.

I

Don Alberic Colón y su esposa Doña Hilda Zambrana suscribieron un contrato mediante el cual le arrendaron a Worldwide Food Distributors, Inc. (en adelante Worldwide) un inmueble, localizado en el barrio Monacillos de Río Piedras, por el término de cinco (5) años a partir de 1ro de mayo de 1985. Además, en dicha cláusula se le concedió a los arrendatarios la opción de prorrogar el contrato por un nuevo término de cinco (5) años.[1] En la cláusula decimocuarta se facultaba al arrendador a *rescindir el contrato*, y así autoriza a los arrendadores a que puedan *proceder al*

---

[1] La cláusula segunda dispone lo siguiente:
"SEGUNDO: Que 'LOS ARRENDADORES' por la presente DAN y CEDEN en arrendamiento a 'LA ARRENDATARIA' el inmueble descrito en el párrafo primero anterior con todas sus instalaciones y pertenencias por el término de CINCO (5) AÑOS a partir del día 1ro de mayo de 1985 con opción a prórroga por CINCO (5) AÑOS adicionales, disponiéndose que 'LA ARRENDATARIA' notificará a 'LOS ARRENDADORES' por escrito su intención de ejercitar la prórroga con un mes de anticipación." Contrato de arrendamiento, pág. 1.

*desahucio* en caso de que la arrendataria incumpliera cualquiera de las cláusulas.([2])

Por otro lado, mediante la cláusula vigésima del contrato, los arrendadores le concedieron a la arrendataria una opción de compra, la cual podía ser ejercitada "durante los primeros [cinco (5)] años de vigencia del mismo por el ajustado y convenido precio de DOSCIENTOS VEINTICINCO MIL DOLARES ($225,000) pagaderos ... al momento de otorgarse la escritura de compraventa".([3]) Contrato de arrendamiento, pág. 5.

Según surge de los autos, el 27 de diciembre de 1985 los arrendadores, mediante carta de su abogada, comunicaron a Worldwide que declaraban vencida y rescindida la opción de compra contenida por razón de su incumplimiento de pagar el canon convenido durante dos (2) meses consecutivos. Finalmente, también mediante carta de 23 de enero de 1990, los esposos Colón notificaron a Worldwide, a través de su abogada, que debido a sus continuos incumplimientos contractuales declaraban rescindido el contrato, requiriéndole a ésta el desalojo en o antes de 1ro de mayo de 1990.

---

([2]) Dicha cláusula expresaba lo siguiente:

DECIMO CUARTO: El incumplimiento por parte de 'LA ARRENDATARIA' de una cualesquiera de las cláusulas de este contrato *dar derecho a 'LOS ARRENDADORES' a declarar rescindido el mismo* aunque no haya vencido el término de arrendamiento y ello dejara en libertad a 'LOS ARRENDADORES' de proceder al desahucio de 'LA ARRENDATARIA' quien vendrá obligada a pagar a 'LOS ARRENDADORES' el balance de las rentas que éstos dejen de recibir, todo ello conforme a la ley aplicable al caso." (Énfasis suplido.) Contrato de arrendamiento, pág. 4.

([3]) La cláusula vigésima lee de la forma siguiente:

"VIGESIMO: Por la presente 'LOS ARRENDADORES' conceden a 'LA ARRENDATARIA' una opción o promesa de venta del inmueble objeto de este contrato durante los primeros 5 años de vigencia del mismo por el ajustado y convenido precio de DOSCIENTOS VEINTICINCO MIL DOLARES ($225,000) pagaderos en efectivo en moneda del curso legal de los Estados Unidos de América al momento de otorgarse la escritura de compraventa. De no hacerse efectivo el pago conforme lo aquí convenido, 'LOS ARRENDADORES' entenderán que 'LA ARRENDATARIA' ha renunciado a su derecho de opción de compra.

"La falta de pago de dos (2) mensualidades consecutivas del cánon de arrendamiento aquí pactado dará lugar a que 'LOS ARRENDADORES' declaren vencida la opción de promesa de venta aquí pactada ...". Contrato de arrendamiento, pág. 5.

El 30 de abril de 1990, es decir, el mismo día en que expiró el primer término de cinco (5) años del arrendamiento, Worldwide presentó una demanda de cumplimiento específico en la cual solicitó al tribunal que le ordenara a los esposos Colón a otorgarle la escritura de venta sobre el inmueble bajo arrendamiento, conforme a la opción de compra referida. Véase esc. 1 de esta opinión. Coetáneamente, presentó una moción de consignación por medio de la cual depositó en la Secretaría del tribunal un cheque por la suma de doscientos veinticinco mil dólares ($225,000) a la cual Colón se opuso. En la alternativa, Worldwide alegó que tenía derecho a permanecer en el local arrendado durante cinco (5) años más, según se había pactado en la segunda cláusula del contrato. Por su parte, los esposos Colón alegaron en su contestación a la demanda, que tanto la opción de prórroga del arrendamiento como la opción de compra habían quedado sin efecto, a través de su carta que declaraba rescindido el contrato conforme a las prerrogativas que le concedía su cláusula decimocuarta.

Días después de haberse presentado la demanda de cumplimiento específico —que hoy consideramos— los esposos Colón presentaron una demanda de desahucio en contra de Worldwide, en la cual alegaron que debido "a los continuos incumplimientos por parte de la demandada, a los claros términos del contrato existente entre ellos", *el contrato de arrendamiento había quedado resuelto*. Demanda, pág. 2. El tribunal dictó una sentencia sumaria en la que decretó el desahucio y ordenó el lanzamiento.

Luego de que la sentencia de desahucio se tornó firme, los esposos Colón solicitaron una sentencia sumaria a su favor en el caso que hoy revisamos a tenor con lo que dispone la Regla 36.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III. Alegaron que la sentencia final y firme del caso de desahucio constituía cosa juzgada, debido a que ésta tuvo el efecto de decretar que el contrato de arrendamiento, que

existió entre las partes, había quedado resuelto debido al incumplimiento de Worldwide, para así resolver también la opción de compra y la de prorrogar el arrendamiento que eran partes de dicho contrato. A esos efectos, en la sentencia del caso de desahucio se determinó lo siguiente:

El incumplimiento repetido por Worldwide de sus obligaciones contractuales dió lugar a que Colón dejara sin efecto la promesa de venta y a que quedara sin efecto la opción a la prórroga contractual. Sentencia, pág. 3.

El tribunal recurrido se negó a dictar la sentencia sumaria solicitada por los esposos Colón aduciendo "que por la naturaleza sumaria del procedimiento de desahucio, dicha sentencia no es impedimento ni constituye base para invocar la defensa de cosa juzgada". Oposición a moción de sentencia sumaria, pág. 1.

No conformes, los esposos Colón recurren ante nos para solicitar la revocación de tal resolución y para que decretemos sumariamente la desestimación del pleito presente a base de la doctrina de cosa juzgada.

## II

La Regla 36.3 de Procedimiento Civil, *supra*, dispone que se dictará una sentencia sumaria de manera inmediata si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas —en unión a las declaraciones juradas, si las hubiese— demuestran que no hay controversia real sustancial en cuanto a ningún hecho material y que, como cuestión de derecho, debe dictarse una sentencia sumaria a favor de la parte promovente. El propósito cardinal de esta regla es promover una solución justa, rápida y económica de la litigación para abreviar la disposición de pleitos que, por no envolver una controversia de hechos genuina, hace innecesaria la celebración de un juicio en su fondo. Si éste es usado con un discernimiento sabio, resultará ser un mecanismo valioso para des-

congestionar los calendarios judiciales. *Mercado Vega v. U.P.R.*, 128 D.P.R. 273 (1991); *Consejo Tit. C. Parkside v. MGIC Fin. Corp.*, 128 D.P.R. 538 (1991); *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 D.P.R. 714 (1986). Por lo tanto, en la medida en que prevalezca la defensa de cosa juzgada que ha sido planteada en la moción de sentencia sumaria, el tribunal debe desestimar la demanda.

Debemos, por lo tanto, determinar si, ante la ausencia de una controversia real de hechos en este caso, procede *como cuestión de derecho* que se aplique la defensa de cosa juzgada invocada por los recurrentes.

### III

■ La doctrina de cosa juzgada tiene su origen en Puerto Rico en virtud del Art. 1204 del Código Civil, 31 L.P.R.A. sec. 3343, el cual, en lo pertinente, señala:

> Contra la presunción de que la cosa juzgada es verdad, sólo será eficaz la sentencia ganada en juicio de revisión.
>
> Para que la presunción de cosa juzgada surta efecto en otro juicio, es necesario que entre el caso resuelto por la sentencia y aquel en que ésta sea invocada, concurra la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron.

■ La defensa de cosa juzgada tiene el efecto de evitar que en un pleito posterior se litiguen cuestiones que ya fueron o que pudieron haber sido *litigadas y adjudicadas* en un pleito anterior. *Rodríguez Rodríguez v. Colberg Comas*, 131 D.P.R. 212 (1992); *A & P Gen. Contractors v. Asoc. Caná*, 110 D.P.R. 753 (1981); *Pagán Hernández v. U.P.R.*, 107 D.P.R. 720 (1978); *Pereira v. Hernández*, 83 D.P.R. 160 (1961). Ella "está fundada en consideraciones de orden público y de necesidad". *Pérez v. Bauzá*, 83 D.P.R. 220, 225 (1961). Véanse: *Rodríguez Rodríguez v. Colberg Comas,* supra; *A & P Gen. Contractors v. Asoc. Caná,* supra. Con dicha doctrina se persigue poner fin a los liti-

gios luego de haber sido adjudicados de forma definitiva por los tribunales y, de este modo, garantizar la certidumbre y seguridad de los derechos declarados mediante una resolución judicial para evitar gastos adicionales al Estado y a los litigantes.

> Por cosa juzgada se entiende lo ya resuelto por fallo firme de un juez o tribunal competente y lleva en sí la firmeza de su irrevocabilidad.
> Indica también el respeto debido a lo fallado y la autoridad que resolvió ... el fundamento de la cosa juzgada no está en una pretensión de infalibilidad en el juzgador, ni menos en el intento de ocultar sus errores, sino que se encuentra en la esencia misma de la resolución judicial, que no merecería tal nombre ni tendría fuerza y resultado, si no se fortaleciera de ese modo. J.M. Manresa y Navarro, *Comentarios al Código Civil Español*, 6ta ed. rev., Madrid, Ed. Reus, 1967, T. VIII, Vol. 2, págs. 278-279.

Para su aplicación, dicha doctrina requiere, por definición, que exista entre el pleito ya resuelto y el caso donde dicha defensa se levanta "la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad [en] que lo fueron". Art. 1204 del Código Civil, *supra; Lausell Marxuach v. Díaz de Yáñez*, 103 D.P.R. 533 (1975); *Rodríguez Rodríguez v. Colberg Comas*, supra.

Veamos si en el caso ante nos se han configurado los requisitos que la figura de la cosa juzgada requiere.

## IV

Las partes relacionadas en el caso presente son las mismas que estuvieron presentes en el procedimiento de desahucio. Por ende, existe la más perfecta identidad de partes en ambos procedimientos.

Asimismo, ambos procesos se desenvuelven alrededor del contrato de arrendamiento: de las correspondientes opciones de compra y de la prórroga del arrendamiento del inmueble en cuestión. Existe, pues, identidad de cosas, el

"objeto o materia sobre la cual se ejercita la acción". *Lausell Marxuach v. Díaz Yáñez*, supra, pág. 535.

◼ Resta, pues, determinar si también está presente el requisito de identidad de causas. Dicho requisito lo explicamos con meridiana claridad en *A & P Gen. Contractors v. Asoc. Caná*, supra, pág. 765, del modo siguiente:

Recuérdese que causa "es el motivo de pedir". Scaevola, *Código Civil*, 2da ed., 1958, T. 20, pág. 535. No se refiere "a la razón o motivo de un contrato" sino que "significa el fundamento capital, el origen de las acciones o excepciones planteadas y resueltas". Manresa, *Comentarios al Código Civil Español*, 5ta ed., 1950, T. 8, Vol. 2, págs. 237–238. Así, el Tribunal Supremo de España ha dictaminado que "la diversidad de acciones no · impide la estimación de la cosa juzgada cuando la razón y causa de pedir es la misma en una y otra, y por tanto, no es el nombre ni la naturaleza, declarativa o constitutiva, la que pueda impedir identidad de la causa pretendida, sino que en este respecto la decisión es si los hechos y fundamentos de las peticiones son los mismos en lo que afecta a la cuestión planteada". (Sentencia de 19 de febrero de 1962, Manresa, *op. cit.*) Otro decreto establece que "la causa equivale a un fundamento o razón de pedir, siendo la acción mera modalidad procesal que es necesario ejercitar para que aquélla tenga efectividad en juicio; que si son idénticas las cosas y causas, no obsta a la eficacia de la cosa juzgada que a la acción se le dé distinto nombre, sin que desaparezca la identidad básica de la presunción porque en el segundo juicio se haga un pedimento distinto no decidido en el primero ...". (Sentencia de 30 de octubre de 1965.) (Énfasis en el original.)

◼ Según el Art. 1459 del Código Civil, 31 L.P.R.A. sec. 4066, el arrendador podrá desahuciar judicialmente al arrendatario, entre otras cosas, por no pagar el canon convenido o por el incumplimiento de cualquiera de las condiciones estipuladas en el contrato. Por otro lado, el arrendador podrá pedir la rescisión del contrato cuando el arrendatario incumpla con su obligación de pagar el precio del arrendamiento en los términos convenidos. Art. 1446 del Código Civil, 31 L.P.R.A. sec. 4053. Así lo reconocieron las partes contratantes en este caso cuando, expre-

samente, facultaron en el contrato a los arrendadores para que pudieran rescindir éste y proceder a la acción de desahucio en caso de que la arrendataria incumpliera con cualquiera de sus cláusulas.

A tenor con lo expuesto en el párrafo que precede, fue necesario como requisito previo para decretar el desahucio en el caso anterior entre las partes que el tribunal hiciera una determinación respecto a si, efectivamente, el contrato de arrendamiento suscrito por éstas, el cual constituye el objeto de este caso, quedó rescindido por el incumplimiento de la arrendataria. Así, pues, la causa de pedir tanto en aquel caso como en el presente son idénticas. La circunstancia de que las acciones instadas en el pleito anterior y en el presente sean distintas, tanto respecto a su denominación como al remedio solicitado, *no derrota la conclusión de que los hechos y fundamentos de las peticiones en uno y otro caso son los mismos de acuerdo con la cuestión planteada en ambos.*

En el pleito de desahucio, el juez de instancia determinó que Worldwide había incumplido en repetidas ocasiones con los términos del contrato de arrendamiento *después de que dicho hecho fuese litigado entre las partes.* En la sentencia de desahucio se determinó que, tanto la opción de prórroga del arrendamiento como la de compra, habían quedado sin efecto debido a los incumplimientos de la arrendataria y por haberlo así comunicado el arrendador a ésta en virtud de la facultad concedida al primero por la cláusula decimocuarta del contrato. La sentencia de desahucio conlleva la resolución del contrato de arrendamiento. *Mora Dev. Corp. v. Sandín*, 118 D.P.R. 733 (1987).

V

Ahora bien, tanto el tribunal de instancia como la parte demandante sostienen la posición de que la sentencia en

un pleito de desahucio *nunca* puede ser utilizada como fundamento para invocar la doctrina de cosa juzgada en un juicio ordinario posterior. Para ello invocan lo resuelto por nosotros en *Cruz v. Bruno*, 76 D.P.R. 966 (1954), y en *Cesaní v. Carlo*, 86 D.P.R. 407 (1962). Sin embargo, un detenido estudio de dichos casos no respaldan esa postura.

En *Cesaní v. Carlo*, supra, la parte demandada en un pleito de accesión levantó la defensa de cosa juzgada utilizando como fundamento la sentencia dictada en un caso de desahucio entre las mismas partes. El tribunal correctamente desestimó dicha defensa, ya que en el pleito posterior de accesión se levantaron controversias relacionadas con la figura del "edificante de mala fe" que no fueron alegadas ni adjudicadas en forma definitiva en el pleito de desahucio. Por lo tanto, no eran de aplicación *ni la defensa de cosa juzgada ni su modalidad de impedimento colateral por sentencia.*[4] Véase *Rodríguez Rodríguez v. Colberg Comas*, supra.

Asimismo, en *Cruz v. Bruno*, supra, se había suscitado entre las partes un claro conflicto de título en el pleito previo de desahucio resultante de una controversia relacionada con la capacidad del otorgante de un contrato de compraventa, lo cual provocó la desestimación de la acción de desahucio sin poderse resolver tal conflicto por imperativo de la naturaleza sumaria del procedimiento. Véanse: *Escudero v. Mulero*, 63 D.P.R. 574 (1944); *Abarca v. Cordero*, 60 D.P.R. 519 (1942). Por consiguiente, en la acción ordinaria posterior entre las mismas partes para dilucidar el mencionado conflicto de títulos, tampoco era de aplicación la doctrina de cosa juzgada en vista de que el tribunal, en la

---

[4] La doctrina de "impedimento colateral" es una modalidad de la doctrina de cosa juzgada. La diferencia entre ambas es que la aplicación de la doctrina de impedimento colateral no depende de que se configure el requisito de identidad de causas, que sí es indispensable para la aplicación de la defensa de cosa juzgada. Véanse: *Pereira v. Hernández*, 83 D.P.R. 160, 166 (1961); *A & P Gen. Contractors v. Asoc. Caná*, 110 D.P.R. 753 (1981).

acción previa de desahucio, no hizo declaración alguna respecto a los derechos que asistían a las partes.

El hecho de que la vista de desahucio sea un procedimiento sumario no limita al demandado en la presentación de prueba a su favor. *Marín v. Montijo*, 109 D.P.R. 268 (1979). Así lo hizo Worldwide en el pleito previo de desahucio.

Resolvemos, pues, que procede la aplicación de la defensa de cosa juzgada a los hechos del presente caso por concurrir entre el pleito original de desahucio y el pleito ante nuestra consideración la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad en que lo fueron. Art. 1204 del Código Civil, *supra; A & P Gen. Contractors v. Asoc. Caná*, supra. Cualquier expresión hecha en los casos *Cruz v. Bruno*, supra, y *Cesaní v. Carlo*, supra, que pueda ser interpretada en contra de lo que hoy resolvemos, queda expresamente revocada.(5)

Conforme a lo anterior, la demandante recurrida Worldwide está impedida de relitigar sus reclamos a los derechos que pudieran surgir del contrato de arrendamiento, como lo son la opción de compra del inmueble arrendado y la opción para la prórroga de dicho contrato, ya que tales reclamos quedaron litigados y resueltos mediante la sentencia final y ahora firme dictada en el pleito anterior de desahucio entre estas mismas partes.

*Se dictará sentencia para expedir el auto solicitado, se revocará la resolución recurrida y, en su lugar, se decretará la desestimación sumaria de las reclamaciones instadas en este pleito.*

El Juez Asociado Señor Fuster Berlingeri concurrió con el resultado sin opinión escrita.

---

(5) Igual disposición hacemos respecto a las expresiones hechas en *Virella v. Virella*, 23 D.P.R. 693 (1916), que puedan ser interpretadas en igual sentido.