Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| ORIENTAL BANK<br><br>Parte Peticionaria<br><br>vs.<br><br>JOHN JESÚS VÁZQUEZ SANTA, SU ESPOSA FRANCHESKA COREANO RAMIREZ Y LA SOCIEDAD LEGAL DE BIENES GANANCIALES COMPUESTA POR AMBOS<br><br>Parte Recurrida | TA2026CE00267 | *Certiorari*<br>Procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso núm.:<br>CG2021CV02868<br><br>Sobre:<br>Cobro de Dinero Ordinario; Ejecución de Hipoteca |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Mateu Meléndez, la Jueza Boria Vizcarrondo y el Juez Robles Adorno.

Robles Adorno, Juez Ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 27 de marzo de 2026.

El 4 de marzo de 2026, Oriental Bank (la parte peticionaria) presentó ante nos una *Petición de Certiorari* y un *Auxilio de jurisdicción* en el que solicitó que revoquemos la *Resolución Interlocutoria* emitida y notificada el 5 de febrero de 2026, por el Tribunal de Primera Instancia, Sala Superior de Caguas (TPI o foro primario).[1]

En el aludido dictamen, el foro primario declaró No Ha Lugar la *Moción de Sentencia Sumaria* presentada por la parte peticionaria.

Por los fundamentos que expondremos a continuación expedimos el auto de *certiorari* solicitado y revocamos la *Resolución* recurrida.

---

[1] Entrada Núm. 74 del caso núm. CG2021CV02868 en el Sistema Unificado para el Manejo y Administración de Casos (SUMAC).

**I.**

El caso de autos tiene su origen cuando el 8 de noviembre de 2021, la parte peticionaria instó una *Demanda* sobre cobro de dinero y ejecución de hipoteca contra el señor John Vázquez Santa, Francheska Coreano Ramírez y la Sociedad Legal de Bienes Gananciales que ambos componen (la parte recurrida) por incumplimiento con el pagaré hipotecario suscrito con la parte peticionaria.[2] Por tanto, adujo que, la parte recurrida debe responder de forma solidaria la suma de $85, 460.31.

Así las cosas, el 20 de enero de 2022, la parte recurrida radicó una *Contestación a demanda y Reconvención* en la que, negó en su mayoría, las alegaciones contenidas en la *Demanda.*[3] Alegó que, la propiedad había sufrido diversos daños a causa de los terremotos de enero de 2020 y los huracanes Irma y María. Ante ello, acudió a una compañía de seguros para sufragar los gastos en los que incurrió para arreglar la propiedad. No obstante, sostuvo que, la compañía de seguro desatendió los reclamos de la parte recurrida y, por tanto, la carga económica que ha tenido ocasionó que incumplieran con el pagaré hipotecario. Ello, pues la parte recurrida tuvo que arrendar un apartamento para poder vivir ante las condiciones inhóspitas de la propiedad. Consecuentemente, solicitó la suma de $150,000.00 en concepto de los daños físicos que sufrió el apartamento.

Luego, el 30 de marzo de 2022, las partes comparecieron al proceso de mediación en casos de ejecución de hipoteca.[4] No obstante, tras diversas reuniones la parte recurrida desistió del proceso de mediación.

---

[2] Entrada Núm. 1 del caso núm. CG2021CV02868 en el Sistema Unificado para el Manejo y Administración de Casos (SUMAC).

[3] Entrada Núm. 11 del caso núm. CG2021CV02868 en el Sistema Unificado para el Manejo y Administración de Casos (SUMAC).

[4] Entrada Núm. 19 del caso núm. CG2021CV02868 en el Sistema Unificado para el Manejo y Administración de Casos (SUMAC).

Tras diversos trámites procesales, el 26 de diciembre de 2025, la parte peticionaria instó una *Moción en solicitud de sentencia sumaria* en la que formuló diecisiete (17) hechos incontrovertidos.[5] La parte peticionaria sostuvo que, la parte recurrida incumplió contractualmente con el pagaré hipotecario a partir de febrero de 2020. Alegó que, los daños estructurales de la propiedad fueron causados por otros factores de la construcción, los cuales quedan fuera de la cobertura del seguro. Con ello, señaló que, la compañía de seguros denegó el desembolso de los fondos solicitados por la parte recurrida. Adujo que, no hay controversia con respecto a que la parte recurrida no cumplió con el pagaré hipotecario y, por tanto, procedía el cobro de dinero y ejecución de hipoteca. Por ende, solicitó que se resolviera sumariamente el pleito a raíz de que contractualmente la parte recurrida incumplió con el pagaré hipotecario.

En respuesta, el 20 de enero de 2026, la parte recurrida radicó una *Oposición a "moción en solicitud de sentencia sumaria"* en la que refutó los alegados hechos incontrovertidos esgrimidos por la parte peticionaria.[6] Alegó que, existe controversia en cuanto a si los alegados vicios de construcción ocasionaron los daños estructurales de la propiedad. Adujo que, los fondos del seguro están vinculados a la obligación hipotecaria y a la condición estructural de la propiedad. Arguyó que, la parte peticionaria otorgó una hipoteca sin inspeccionar la propiedad y, por tanto, asumió el riesgo de las condiciones del inmueble. En esa línea, argumentó que, ante la vulnerabilidad de la estructura del hogar, el manejo de los fondos del seguro para habilitar la propiedad afectó que estos pudieran sufragar el pagaré hipotecario y acondicionar la propiedad para que

---

[5] Entrada Núm. 69 del caso núm. CG2021CV02868 en el Sistema Unificado para el Manejo y Administración de Casos (SUMAC).
[6] Entrada Núm. 71 del caso núm. CG2021CV02868 en el Sistema Unificado para el Manejo y Administración de Casos (SUMAC).

fuese habitable, no debe proceder resolver sumariamente la controversia. Además, señaló que, la controversia debía ventilarse en su fondo para que el *foro a quo* pudiera adjudicar la credibilidad de la prueba que tenía ante sí. Consecuentemente, solicitó que, el foro primario declarara No Ha Lugar la *Moción en solicitud de sentencia sumaria.*

Evaluada las posturas de las partes, el 5 de febrero de 2026, el TPI emitió y notificó, una *Resolución*[7] en la que coligó los siguientes hechos incontrovertidos:

1. El demandado John Jesús Vázquez Santa es mayor de edad, casado con Francheska Coreano Ramírez, y ambos conforman la sociedad legal de bienes gananciales demandada en este caso.

2. Oriental Bank es una institución bancaria organizada y existente conforme a las leyes del Estado Libre Asociado de Puerto Rico, con capacidad legal para demandar y ser demandada.

3. El 24 de junio de 2009, los demandados otorgaron un pagaré hipotecario por la suma principal de Ciento Cinco Mil Dólares ($105,000.00), a ser pagadero conforme a los términos y condiciones allí establecidos.

4. En garantía del referido pagaré, los demandados otorgaron ese mismo día una Escritura de Primera Hipoteca, la cual grava un bien inmueble localizado en el municipio de San Lorenzo, Puerto Rico.

5. La Escritura de Primera Hipoteca fue debidamente inscrita en el Registro de la Propiedad, conforme surge de la certificación registral que obra en autos.

6. El pagaré hipotecario y la escritura de hipoteca contienen cláusulas relativas al pago mensual, tasa de interés, aceleración de la deuda en caso de incumplimiento y ejecución de la garantía hipotecaria.

7. Oriental Bank adquirió los derechos del acreedor original relacionados con el pagaré hipotecario objeto de este pleito, conforme surge de los documentos corporativos y certificaciones que obran en el expediente.

8. El 8 de noviembre de 2021, Oriental Bank presentó la Demanda de cobro de dinero y ejecución de hipoteca que dio inicio al presente pleito.

9. Los demandados fueron debidamente emplazados y comparecieron al pleito, presentando escritos defensivos en respuesta a la demanda.

10. Durante el trámite del caso, se incorporaron al expediente documentos relacionados con el préstamo hipotecario, incluyendo el pagaré, la escritura de hipoteca, certificaciones registrales y certificaciones corporativas.

11. La propiedad hipotecada sufrió daños como consecuencia de eventos atmosféricos, incluyendo los huracanes Irma y María.

12. A raíz de los daños sufridos por la propiedad, se presentó una reclamación de seguro relacionada con el inmueble dado en garantía.

---

[7] Entrada Núm. 74 del caso núm. CG2021CV02868 en el Sistema Unificado para el Manejo y Administración de Casos (SUMAC).

13. La reclamación de seguro culminó en un acuerdo transaccional, mediante el cual se efectuó un pago relacionado con los daños sufridos por la propiedad.

14. El 26 de diciembre de 2025, Oriental Bank presentó una Moción en Solicitud de Sentencia Sumaria en este caso.

15. Los demandados presentaron su Oposición a la Solicitud de Sentencia Sumaria, y posteriormente Oriental Bank presentó una Réplica a dicho escrito.

Por otro lado, formuló los siguientes hechos en controversia:

1. Comunicaciones y/o negociaciones habidas entre las partes, si alguna, relacionadas con la condición estructural de la propiedad hipotecada previo al otorgamiento del pagaré y la escritura de hipoteca.

2. Comunicaciones y/o negociaciones habidas entre las partes, si alguna, relacionadas con el conocimiento, divulgación o manejo de vicios estructurales o condiciones preexistentes de la propiedad al momento de formalizarse el préstamo hipotecario.

3. Alcance y naturaleza de los vicios estructurales o deficiencias constructivas, si alguno, existentes en la propiedad hipotecada, así como su impacto sobre la habitabilidad y el uso del inmueble.

4. Impacto real y específico de los huracanes Irma y María sobre la estructura de la propiedad hipotecada, incluyendo el alcance de los daños ocasionados por dichos eventos atmosféricos.

5. Efecto de las circunstancias extraordinarias derivadas de la pandemia, si alguno, sobre la habitabilidad del inmueble y la capacidad económica de los demandados para cumplir con las obligaciones hipotecarias.

6. Gestiones, comunicaciones y/o negociaciones realizadas entre las partes, si alguna, relacionadas con la presentación, tramitación y resolución de la reclamación de seguro sobre la propiedad hipotecada.

7. Aplicación, acreditación y/o destino del producto del pago recibido como resultado del acuerdo transaccional relacionado con la reclamación de seguro, incluyendo si dicho pago fue aplicado total o parcialmente a la deuda hipotecaria o destinado a otros fines.

8. Comunicaciones entre las partes, si alguna, relacionadas con la determinación del balance adeudado, la imputación de pagos, cargos, intereses, penalidades y cualquier crédito aplicable al préstamo hipotecario.

9. Cuantía real exigible bajo el pagaré hipotecario al momento de la presentación de la Solicitud de Sentencia Sumaria, incluyendo la corrección aritmética y metodológica del balance reclamado.

10. Momento en que se produjo la alegada mora, así como si la misma fue continua, interrumpida o modificada por pagos, acuerdos tácitos, tolerancias o curso de conducta entre las partes.

11. Razonabilidad y buena fe en el ejercicio de las facultades contractuales por parte del acreedor hipotecario, particularmente en relación con la aplicación del producto del seguro y la aceleración de la deuda.

12. Curso de conducta seguido por las partes con posterioridad a los daños sufridos por la propiedad, incluyendo comunicaciones, gestiones realizadas y expectativas razonables creadas respecto al manejo del préstamo hipotecario.

13. Conocimiento del acreedor hipotecario, si alguno, sobre la condición estructural de la propiedad y los daños sufridos, así como la respuesta o falta de respuesta ante dichas circunstancias.

14. Interacción entre el pleito de cobro de dinero y ejecución de hipoteca y el litigio relacionado con la reclamación de seguro, incluyendo si ambos procesos fueron manejados de forma independiente o coordinada y el efecto de ello sobre las partes.

15. Necesidad de aquilatar prueba testifical y documental, así como de adjudicar credibilidad, para esclarecer los hechos relacionados con la condición del inmueble, la aplicación de pagos, el curso de conducta de las partes y la cuantía real exigible.

El foro primario concluyó que, estaba impedido de resolver sumariamente el pleito ante las controversias de hechos que deben ser atendidas en un juicio en su fondo en el que las parte puedan presentar prueba sobre sus alegaciones. En esa línea, razonó que, carecía de información para determinar si la compañía de seguro actuó conforme a lo pactado. Además, el foro primario determinó que, carecía de prueba para determinar si la conducta de las partes fue contrario a los principios de la buena fe contractual. Consecuentemente, el TPI declaró No Ha Lugar la *Moción de Sentencia Sumaria* y ordenó la continuación de los procedimientos.

Insatisfecha, el 18 de febrero de 2026, la parte peticionaria radicó una *Reconsideración de resolución del 5 de febrero de 2026* en la que reiteró que, el *foro a quo* identificó como hechos controvertidos asuntos irrelevantes a la ejecución de hipoteca.[8] Sostuvo que, los asuntos relacionados al seguro y cuando procedía el desembolso están regulados en el contrato suscrito entre las partes. Igualmente, acreditó desde cuando la parte recurrida incumplió con el pagaré hipotecario. Por tanto, procede resolver sumariamente el pleito ante el incumplimiento de la parte recurrida con el pago de la hipoteca.

En igual fecha, el foro primario declaró No Ha Lugar la *Reconsideración de resolución del 5 de febrero de 2026*.[9]

---

[8] Entrada Núm. 82 del caso núm. CG2021CV02868 en el Sistema Unificado para el Manejo y Administración de Casos (SUMAC).

[9] Entrada Núm. 83 del caso núm. CG2021CV02868 en SUMAC.

Inconforme, el 4 de marzo de 2026, la parte peticionaria presentó una *Petición Certiorari* en la que coligió los siguientes señalamientos de error:

Primer error: Erró el Tribunal de Primera Instancia al no desestimar la Reconvención presentada por la parte recurrida, al omitir aplicar la doctrina de cosa juzgada y la prescripción extintiva, defensas dispositivas que surgían claramente del récord y que impedían, como cuestión de derecho, la continuación de dicha reclamación.

Segundo error: Erró el TPI al desatender el principio de pacta sunt servanda y la fuerza vinculante del contrato.

Tercer error: Erró el TPI al identificar como controvertidos hechos que son jurídicamente irrelevantes o que constan contractualmente resueltos.

En igual fecha, la parte peticionaria radicó un *Auxilio de Jurisdicción* en la que declaramos No Ha Lugar al *Auxilio de Jurisdicción.*

Ese mismo día, emitimos una *Resolución* en la que le concedimos hasta el 16 de marzo de 2026 a la parte recurrida para que presentara su oposición.

Transcurrido el término concedido, la parte recurrida no compareció ante nos. Consecuentemente, procederemos a resolver el recurso ante nos sin su comparecencia.

**II.**

**A.**

El auto de *certiorari* es un remedio procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez,* 211 DPR 821 (2023). Véase, además, *IG Builders et al v. BBVAPR,* 185 DPR 307, 337 (2012); *Medina Nazario v. McNeil Healthcare LLC,* 194 DPR 723, 728 (2016). A diferencia de una apelación, el tribunal de superior jerarquía tiene la facultad de expedir el auto de *certiorari* de forma discrecional. *Rivera Figueroa v. Joe's European Shop,* 183 DPR 580, 596 (2011). Cónsono con lo

anterior, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, dispone en lo pertinente lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de este apéndice o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.
>
> [. . .]

Si el asunto sobre el cual versa el recurso de *certiorari* está comprendido en una de las instancias establecidas en la Regla 52.1 de Procedimiento Civil, *supra*, debemos pasar entonces a un segundo escrutinio. El mismo se caracteriza por la discreción que ha sido conferida al Tribunal de Apelaciones para autorizar, expedir y adjudicar en sus méritos el caso. En aras de ejercer de manera sabia y prudente nuestra facultad discrecional, la Regla 40 del Reglamento del Tribunal de Apelaciones, Regla ___ del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 141, 216 DPR __ (2025), dispone los criterios a considerar para poder atender o no las controversias ante su consideración. *BPPR v. SLG Gómez-López*, 213 DPR 314 (2023). Véase, *Rivera et al. v. Arcos Dorados et al.*, *supra*; *Pueblo v. Rivera Montalvo*, 205 DPR 352, 372 (2020); *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96-97 (2008). Los criterios que debemos considerar son los siguientes:

> El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Lo anterior impone a este Tribunal la obligación de ejercer prudentemente su juicio al intervenir con el discernimiento del foro de instancia, de forma que no se interrumpa injustificadamente el curso corriente de los casos ante ese foro. *Torres Martínez v. Torres Ghigliotty*, *supra*, pág. 97.

**B.**

El mecanismo procesal de la sentencia sumaria surge de la Regla 36.1 de Procedimiento Civil, 32 LPRA, Ap. V, R. 36.1. El propósito de esta regla es facilitar la solución justa, rápida y económica de litigios civiles en los cuales no existe controversia real y sustancial de hechos materiales que no requieren ventilarse en un juicio plenario. *Batista Valentín v. Sucn. de José Enrique Batista Valentín y otros*, 2025 TSPR 93, 216 DPR ___ (2025). *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018); *Bobé et al. v. UBS Financial Services*, 198 DPR 6, 20 (2017); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013). El mecanismo de sentencia sumaria procede en los casos en los que no exista controversia reales y sustanciales en cuanto a los hechos materiales y reste disponer las controversias de derecho existentes. *Batista Valentín v. Sucn. de José Enrique Batista Valentín y otros*, 2025 TSPR 93, 216 DPR ___ (2025). *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414,

430 (2013); *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 DPR 881, 911-912 (1994). La parte que promueve la moción de sentencia sumaria debe establecer con claridad su derecho y demostrar que no existe controversia real en cuanto a algún hecho material. *González Aristud v. Hosp. Pavía*, 168 DPR 127, 137 (2006). En específico, la Regla 36.1 de Procedimiento Civil, *supra*, R. 36.1, establece lo siguiente:

> Una parte contra la cual se haya formulado una reclamación podrá presentar, a partir de la fecha en que fue emplazado pero no más tarde de los treinta (30) días siguientes a la fecha límite establecida por el tribunal para concluir el descubrimiento de prueba, una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación.

No obstante, cualquier duda es insuficiente para derrotar una solicitud de sentencia sumaria. *Ramos Pérez v. Univisión*, 178 DPR 200, 213-214 (2010). Con ello, la duda debe ser de tal naturaleza que permita "concluir que existe una *controversia real y sustancial* sobre hechos relevantes y pertinentes". *Ramos Pérez v. Univisión, supra*, pág. 214.

En contraste, el oponente a la moción de sentencia sumaria está obligado a establecer que existe una controversia real en cuanto a algún hecho material a la controversia y, en ese sentido, no es cualquier duda la suficiente para derrotar la solicitud. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 138 (2015). El oponente, no puede descansar en meras aseveraciones o negaciones de sus alegaciones, sino que debe proveer contradeclaraciones juradas y documentos que sustenten los hechos materiales en disputa. *Batista Valentín v. Sucn. de José Enrique Batista Valentín y otros*, 2025 TSPR 93, 216 DPR ___ (2025). *SLG Zapata-Rivera v. JF Montalvo, supra*, pág. 213.; *Ramos Pérez v. Univisión, supra*, pág. 215; *Cruz Marcano v. Sánchez Tarazona*, 172 DPR 526, 550 (2007).

Entretanto, la Regla 36.3 de Procedimiento Civil, *supra*, R. 36.3, establece el procedimiento para la consideración de la moción de sentencia sumaria, así como el contenido de la moción y de la contestación de la parte promovida. Respecto a la moción solicitando que se dicte una sentencia sumaria, la Regla 36.3(a) de Procedimiento Civil, *supra*, R. 36.3(a), dispone que tendrá que desglosar lo siguiente:

(1) una exposición breve de las alegaciones de las partes;
(2) los asuntos litigiosos o en controversia;
(3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria;
(4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;
(5) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y
(6) el remedio que debe ser concedido.

La Regla 36.3(b) de Procedimiento Civil, *supra*, R. 36.3(b) prescribe que la contestación a la moción de sentencia sumaria debe contener, además de los sub incisos (1), (2) y (3) del inciso (a): una relación de los hechos esenciales y pertinentes que están en controversia, con referencia a los párrafos enumerados por la parte promovente y con indicación de la prueba en la que se establecen esos hechos; una enumeración de los hechos que no están en controversia; y las razones por las cuales no se debe dictar la sentencia, argumentando el derecho aplicable.

Así pues, la Regla 36.3(c) de Procedimiento Civil, *supra*, R. 36.3(c) añade que, cuando se presente una moción solicitando sentencia sumaria y se sostenga conforme a la Regla 36, *supra*, la parte promovida no podrá descansar en las aseveraciones contenidas en sus alegaciones. Por el contrario, estará obligada a contestar detallada y específicamente como lo haya hecho la parte

promovente de la moción. De no hacerlo, la citada regla prescribe que se dictará la sentencia sumaria en su contra, si procede.

En esa línea, la Regla 36.5, *supra*, R. 36.5 establece que las declaraciones juradas para sostener u oponerse a la moción se basarán en el conocimiento personal de la persona declarante y que contendrán los hechos que serían admisibles en evidencia y demostrarán afirmativamente que la persona declarante está cualificada para testificar en cuanto a su contenido. Asimismo, prescribe que "[c]opias juradas o certificadas de todos los documentos, o de partes de éstos en que se haga referencia en una declaración jurada, deberán unirse a la declaración o notificarse junto con ésta". *Íd.*

Por otro lado, la Regla 36.6, *supra*, instituye el mecanismo a seguir cuando no puedan obtenerse declaraciones juradas. Al respecto, estatuye que, si las declaraciones juradas de la parte que se oponga a la moción resultan que no puede presentar mediante declaraciones juradas hechos esenciales para justificar su oposición, entonces el tribunal podrá denegar la solicitud de sentencia sumaria o posponer su consideración. De posponer la consideración, el foro primario podrá dictar cualquier orden que entienda justa y le concederá a la parte promovida un término razonable para obtener declaraciones juradas, tomar deposiciones o conseguir que la parte contraria le facilite cierta evidencia.

Sin embargo, los tribunales no podrán dictar sentencia sumaria en cuatro situaciones: (1) cuando existan hechos materiales y esenciales controvertidos; (2) cuando existen alegaciones afirmativas en la demanda sin refutar; (3) cuando surge de los propios documentos que acompañan la moción en solicitud de sentencia sumaria que existe una controversia sobre algún hecho

material o esencial; o (4) cuando no procede como cuestión de Derecho. *Oriental Bank v. Perapi*, 192 DPR 7, 26-27 (2014).

Conforme con esos principios, en *Meléndez González et al. v. M. Cuebas*, supra, el Tribunal Supremo delineó el estándar que el Tribunal de Apelaciones debe utilizar para revisar una denegatoria o una concesión de una moción de sentencia sumaria.

En primer lugar, reafirmó que el Tribunal de Apelaciones se encuentra en la misma posición que el TPI al momento de revisar solicitudes de sentencia sumaria, siendo su revisión una *de novo* y teniendo la obligación de regirse por la Regla 36 de Procedimiento Civil, *supra*, y los criterios que la jurisprudencia le exige al foro primario. *Íd.*, pág. 118. Asimismo, deberá examinar el expediente de la manera más favorable hacia la parte promovida, llevando a cabo todas las inferencias permisibles a su favor. *Íd.* Ahora bien, reconoció que el foro apelativo está limitado, toda vez que no podrá tomar en consideración evidencia que las partes no presentaron ante el foro primario, ni podrá adjudicar los hechos materiales en controversia. *Íd.*

En segundo lugar, prescribió que el Tribunal de Apelaciones deberá revisar que tanto la moción en solicitud de sentencia sumaria, como la oposición, cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra*. Íd.

En tercer lugar, mandató que, ante la revisión de una sentencia dictada sumariamente, el Tribunal de Apelaciones deberá revisar si en realidad existen hechos materiales en controversia y, de haberlos, estará obligado a exponer específicamente cuáles hechos materiales están en controversia y cuáles no, en cumplimiento con la Regla 36.4 de Procedimiento Civil, *supra*, R. 36.4. *Íd.*

En cuarto lugar, dispuso que, si encuentra que los hechos materiales realmente no están en controversia, entonces el Tribunal de Apelaciones deberá revisar *de novo* si el foro primario aplicó correctamente el Derecho. *Íd.*, pág. 119.

## C.

La doctrina de cosa juzgada vela por el interés gubernamental de que se finalicen los pleitos y, por otro lado, se interesa en someter a los ciudadanos a las molestias de tener que litigar dos veces una misma causa. *Presidential v. Transcaribe*, 186 DPR 263, 274 (2012). Dicha doctrina, "persigue poner fin a los litigios luego de haber sido adjudicados de forma definitiva por los tribunales y, de este modo, garantizar la certidumbre y seguridad de los derechos declarados mediante una resolución judicial para evitar gastos adicionales al Estado y a los litigantes". *Worldwide Food Dis., Inc. v. Colón et al.*, 133 D.P.R. 827, 833–834 (1993). La defensa de cosa juzgada también tiene el efecto de evitar que en un pleito posterior se litiguen nuevamente, entre las mismas partes y sobre las mismas cosas y causas de acción, las controversias que ya fueron o pudieron haber sido litigadas y adjudicadas en el pleito anterior. *Presidential v. Transcaribe, supra*, citando *Worldwide Food Dis., Inc. v. Colón, supra*, a la pág. 833. Cuando se invoca la cosa juzgada, se debe evaluar si en efecto concurren las identidades requeridas para aplicar dicha doctrina, a pesar de que exista una controversia justiciable entre las partes.  En primer lugar, para determinar si se satisface el requisito de identidad entre las cosas se satisface tras versar sobre el mismo asunto, aunque en uno se aborde totalmente y sólo parcialmente en el otro. *Acevedo v. Western Digital Caribe, Inc.*, 140 D.P.R. 452, 465 (1996). En segundo lugar, la identidad entre las causas se logra establecer cuando en el pleito anterior como en el que se invoca la excepción de cosa juzgada, las acciones

ejercitadas implican un mismo motivo o razón de pedir: si los hechos y fundamentos de las peticiones son los mismos en lo que afecta la cuestión planteada. *A & P General Contractors v. Asoc. Caná Inc.*, 140 DPR 452, 465 (1996). Por otro lado, el impedimento colateral se distingue de la doctrina de cosa juzgada dado que para su aplicación no es necesario que se de el requisito de identidad de causas. *Presidential v. Transcaribe, supra,* pág. 277. Es decir, el petitorio de la presentación de una demanda no tiene que ser la misma que se presentó en la demanda anterior. *Íd.* La doctrina de impedimento colateral "surte efectos cuando un hecho esencial para el pronunciamiento de una sentencia se dilucida y se determina mediante sentencia válida y final [y] tal determinación es concluyente en un segundo pleito entre las mismas partes, aunque estén envueltas causas de acción distintas". *Beníquez et al. v. Vargas et al.,* 184 D.P.R. 210, 225 (2012).

### III.

En el caso de epígrafe, la parte peticionaria argumentó que, el foro primario debió desestimar sumariamente el pleito ante la falta de hechos controvertidos. Asimismo, argumentó que, el TPI debió desestimar la controversia ante la *Reconvención* presentada por la parte recurrida tras no aplicar la doctrina de cosa juzgada y prescripción. Arguyó que, el *foro a quo* actuó contrario a lo establecido contractualmente entre las partes.

Conforme las normas jurídicas pormenorizadas, nos encontramos en la misma posición que el TPI en revisar una solicitud de sentencia sumaria. En primer lugar, nos corresponde evaluar si las partes cumplieron con los requisitos de forma exigidos por la Regla 36.3 de Procedimiento Civil, *supra*, respecto a la moción de sentencia sumaria, así como su oposición.

Luego de evaluar la *Solicitud de sentencia sumaria,* concluimos que esta cumplió con los requisitos de forma

establecidos en la Regla 36.3 de Procedimiento Civil, *supra*, R. 36.3. En dicha solicitud, la parte apelada enumeró varias determinaciones de hechos que a su juicio no había controversia sobre ellos. En aras de respaldar los hechos incontrovertidos, anejó los documentos correspondientes e hizo referencia a cada uno de ellos de forma específica.

Por otra parte, en la *Oposición a solicitud de sentencia sumaria* la apelante cumplió con los requisitos de forma dispuestos en la citada regla. Ello, pues la parte apelante enumeró los hechos en los que razonaba existía controversia de hechos y los hechos incontrovertidos.

Ahora nos corresponde determinar si existen hechos en controversia que imposibilitan la disposición sumaria del caso. Tras un examen cuidadoso del expediente y las mociones de sentencia sumaria y su oposición, así como los documentos incluidos en las mociones de sentencia sumaria, concluimos que no existen hechos materiales en controversia que impidan la disposición sumaria del caso. Contrario a lo resuelto por el foro primario, examinamos cuidadosamente la moción de sentencia sumaria y su respectiva oposición y denotamos que la deuda hipotecaria es una vencida, líquida y exigible. Ello, obedece a que, la parte recurrida se obligó a cumplir con un pagaré hipotecario, suscrito el 24 de junio de 2009, por la cuantía de $596.18 en determinado tiempo, en el que la parte peticionaria era el acreedor hipotecario. Ante su incumplimiento, la parte recurrida presentó el 8 de noviembre de 2021, una *Demanda* en la que reclamó el incumplimiento de la parte recurrida con el pagaré hipotecario al que se obligó. Incluso, en un pleito anterior, el 15 de enero de 2024, las partes lograron un acuerdo transaccional en aras de finiquitar la deuda.[10] Nótese que, las partes

---

[10] Véase Anejo 7 de la Entrada Núm. 69 del caso núm. CG2021CV02868 en el SUMAC.

comparecieron a un proceso de mediación. No obstante, la parte recurrida desistió de participar en dicho proceso. Ciertamente, las alegaciones esbozadas en la *Reconvención* no guardan relación con la obligación contractual de cumplir con un pagaré hipotecario. Los eventos que sufrió la parte recurrida son lamentables, pero no exoneran a la parte recurrida de incumplir con el pago de la hipoteca que acordó con la parte peticionaria. A esos fines, el cobro de dinero reclamado por la parte peticionaria es procedente en derecho ante el incumplimiento de la parte recurrida con los pagos hipotecarios, siendo la deuda una vencida, líquida y exigible.

Por otro lado, esta Curia tomó conocimiento judicial sobre otro pleito en el que la parte recurrida instó en el foro primario sobre una acción de daños y perjuicios contra la parte peticionaria ante los gastos que incurrió dado que la propiedad en cuestión era inhabitable.[11] Sin embargo, surge que, en el citado pleito el 18 de junio de 2020, notificada el 22 de junio de 2020, el TPI emitió una *Sentencia Parcial* en la que ordenó, con perjuicio, el cierre de la reclamación con respecto a la parte peticionaria a solicitud de la parte recurrida.[12] Así pues, denotamos que la controversia ante nos es cosa juzgada debido a que el pleito anterior versó sobre el mismo reclamo contenido en la *Reconvención* y las mismas partes, lo cual hay perfecta identidad de partes. Con ello, el cierre del pleito, con perjuicio, tiene un efecto de impedir que la parte recurrida interpusiera nuevamente una acción judicial contra la parte peticionaria. Por tanto, atisbamos que, con respecto a la súplica interpuesta en la *Reconvención* la misma es una cosa juzgada.

A la luz de lo esbozado, y en ausencia de prueba que nos permita resolver en contrario, expedimos el auto de *certiorari* que nos ocupa, al amparo de lo dispuesto en la Regla 52.1 de

---

[11] *Véase* caso núm. CG2020CV01123 en el SUMAC.
[12] Entrada Núm. 28 del caso núm. CG2020CV01123 en el SUMAC.

Procedimiento Civil, *supra*, y la Regla 40 de nuestro Reglamento, *supra*. Además, resulta procedente revocar la *Resolución* recurrida ante la ausencia de hechos en controversia que impiden la disposición sumaria del caso. En su consecuencia y aplicado el derecho al análisis requerido, corresponde dictar *Sentencia* a favor de la parte peticionaria.

Asimismo, desestimamos la *Reconvención* instada por la parte recurrida en virtud de que la parte recurrida, previamente tuvo su día en corte y solicitó cesar de continuar una reclamación contra la parte peticionaria, la cual fue, con perjuicio. Ante ello, es de aplicación la doctrina de cosa juzgada.

**IV.**

Por los fundamentos que anteceden, expedimos el auto de *certiorari*, revocamos la *Resolución* recurrida por no haber hechos en controversias sobre la causa de acción y no existiendo impedimento para la resolución del caso. De igual forma, se desestima la *Reconvención* presentada y devolvemos el caso ante el foro primario para que dicte la Sentencia conforme y en cumplimiento de lo aquí resuelto.

Notifíquese.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones